Nesbitt et al. v. Drew.

## NESBITT ET AL. vs. DREW.

1. Where two slaves are hired for a year at a gross sum, the contract is entire, and its entire fulfilment a condition precedent to its enforcement: If therefore the owner take one of them from the service of the hirer, before the expiration of the term, without his consent, he cannot recover any part of the price contracted to be paid.

2. A provision in a contract for the hire of slaves that the owner shall "deduct or account for all time lost by sickness or *otherwise*," being evidently intended for the benefit of the hirer, must be so construed as to effect that intent, and the term *otherwise* be taken to refer to death or other cause, unmixed with the fault of either party, by which the slaves are rendered incapable of performing the expected service.

3. Where slaves are hired to work at a saw mill, it is not a breach of the contract to employ them in rafting saw logs down an adjacent river, that being at the time of the hiring and long before, a part of the ordinary labor performed by the hands at said mill.

Error to the Circuit Court of Cherokee. Tried before the Hon. Thomas A. Walker.

ASSUMPSIT by the defendant against the plaintiffs in error on a promissory note for one hundred and sixty-eight dollars, made by them to him for the hire of two slaves, dated the 23d January 1847, and payable the 25th January 1848. On the trial, the defendants, after the plaintiff had read the note sued on and rested, introduced in evidence an instrument of which the following is a copy: "I, John Drew, this day hired unto Wilson Nesbitt my two negro men, Jeffro and Daniel, for the term of twelve months from the twenty-fifth day of January eighteen hundred and forty-seven until the twenty-fifth day of

January eighteen hundred and forty-eight: I am to clothe said negroes comfortably, and all time lost by sickness or otherwise I am to deduct or account for unto the said Wilson Nesbitt. Witness my hand, this 23d January 1847.—JOHN DREW." The defendants then proved that about the 2d Sept. Jeffro was taken sick and went home, whence he never returned, and that about the 20th November, Drew, the plaintiff, took Daniel from the service of Nesbitt without his consent and refused to return him on demand. The last fact was established by proof of the admission of Drew, and it was shown that when the admission was made, he also stated as the reason why he took Daniel away, that he could not swim and Nesbitt had put him to rafting logs down the river, an employment for which he, Drew, had not tried him. To rebut this the defendants proved by the subscribing witness that at the time of the contract of hiring there was no restriction imposed as to the kind of work in which the slaves were to be employed; that they were hired to work as hands at Nesbitt's steam mill; and that rafting saw logs was and for a long time previous to the hiring had been a part of the ordinary weekly labor performed by the hands at said mill. The court charged the jury that if they believed from the testimony, that the terms of the hiring were reduced to writing and that by the terms of the contract the plaintiff was to deduct all the time lost by the slaves either by sickness or *otherwise;* that one of the slaves was taken sick and went home, and that the other was sent for and taken away by the plaintiff without the consent of the defendant, Nesbitt—then and in that event the plaintiff could recover only for the time the slaves actually worked for the said Nesbitt, and to that extent according to a proper construction of the contract he was entitled to recover. To this charge the defendants excepted and now assign it as error.

ELMORE & YANCEY, for the plaintiffs in error:

1. A contract by D. to hire to N. two slaves for one year for $168, is an entire contract; and if D. before the year expires takes away one of the negroes, without and against the consent of N., he cannot recover for the time of service of either of the slaves.—Wright v. Turner, 1 Stew. 29; McGehee v. Hill, 4 Port. 170; Givhan v. Dailey, Adm'r, 4 Ala. 336.

Nesbitt et al. v. Drew.

2. The above principle is not altered or affected by a clause in the contract, that D. was to deduct or to account for to N., " all time lost by sickness or otherwise."—Davis v. Wade, 4 Ala. 208; McGehee v. Hill, 4 Port. 175-6.

3. In the construction of contracts, doubtful and indefinite terms will be made reconcilable with the subject matter of the contract, and so construed that each clause shall stand.—Story on Cont. §§ 237, 252-8; Evans v. Saunders, 8 Port. 497.

4. A clause in a contract repugnant to the general intent, will be rejected.—Story on Cont. §§ 256-7.

5. The word " otherwise" in this contract must be construed with reference to the meaning and use of the word "sickness," preceding it.—Story on Cont. § 238.

6. The qualification of this contract is for the benefit of N. No construction will therefore be put upon it, which will place him in a worse condition.—Story on Cont. § 260.

7. The refraining from every obstruction by the owner to the use of the thing hired, or to the fulfilment of his undertaking, is obligatory on the owner.—Story on Bail. § 385.

Rice, for the defendant:

1. The contract of hiring is in writing, and therefore cannot be varied or affected by any parol proof. The meaning of the contract must be determined alone from its *written provisions.* Cole v. Spann, 13 Ala. 597. (And although the parol evidence may show that a *part of the ordinary* work of Nesbitt's mill establishment was to raft logs down the river, yet it does not show that it was the ordinary custom to put on the raft those negroes *who could not swim.* Negroes who could *not swim* should have been employed in *other parts of the work,* such as cutting and hauling logs, &c. This evidence cannot vary or control the written contract.)

2. The master is under a legal and moral obligation to protect the morals of his slave: *A fortiori,* he must be bound to protect the life of his slave—and not to expose him to danger. Hogan v. Carr & Anderson, 6 Ala. 471.

3. It would be a most unreasonable construction of this contract of hiring, to hold it to be an agreement by the master that his slave should be exposed constantly on a raft on a large river, when he knew the negro could not swim. The law will not

put such a construction on the *written contract*, and no parol evidence can control or vary the effect of the writing.

4. The owner is justified in terminating the contract and resuming possession of his slave whenever the conduct of the hirer threatens *injury* or *destruction* to the reversionary interest of the owner in the slave.—6 Ala. 472, and cases there cited.

5. If there had been any pretence of proof that Nesbitt had sustained any special damages by the loss of the negro, beyond what was allowed by the jury under the charge given, Nesbitt might then have asked a *special charge* invoking the benefit of the doctrine of *recoupement*. But *upon the facts* of this case as shown, there is no error in the charge.

CHILTON, J.—The two agreements found in this record, entered into between the same parties on the same day, bearing even date and refering to the same subject matter, must be construed and considered as forming one contract, as though they were both embraced in the same instrument. Thus considered, they are in substance as follows : Drew hires to Nesbitt his two negro men, Jeffro and Daniel, for the term of twelve months, commencing the 25th January 1847 and closing the 25th January 1848 : He is to clothe said negroes comfortably and is to deduct or account to said Nesbitt for all the time of said slaves lost by sickness or otherwise. In consideration of which hiring, Nesbitt & Paty agree to pay him or his order at the end of said term, (25th Jan. 1848,) the sum of one hundred and sixty-eight dollars. This is, beyond all question, an entire contract. A gross sum is to be paid for the services of the two slaves for one year.—Story on Cont. (2d edit.) §§ 21-2, page 14, and notes; Story's Eq. Jurisp. §§ 470-9. The rule applicable to such contracts is, that the entire fulfilment of the promise by either is a condition precedent to the fulfilment of any part of the promise by the other. The hiring, which is the consideration, being entire wholly fails if the owner refuses to perform the contract and takes the slaves out of the possession of the party to whom they are hired before the expiration of the term and against his consent. It is not for the court to say that Nesbitt would have hired the slaves if he had known that one of them was to be taken out of his possession some months before the term of hiring expired.—Story on Cont. (2d edit.) § 23; Miner v. Brad-

ly, 22 Pick. Rep. 459. Drew, by taking away the slave Daniel, violated the contract and cannot be allowed to enforce it against the defendants below, who never acquiesced in his act or waived his compliance with the agreement.—Wright v. Turner, 1 Stew. 29; McGehee v. Hill, 4 Por. Rep. 170; Givhan v. Dailey, Adm'r, 4 Ala. 336; McGehee v. Walke, 15 ib. 188-9.

But it was supposed by the presiding judge in the court below, that as this contract provided that Drew should deduct or account for the time lost "by sickness or *otherwise,*" he had the right to take and retain the slaves against the consent of Nesbitt and to allow a corresponding abatement upon the note for the hire. Such is not the correct construction of this contract. The party hires the slaves for a year, and it would not only defeat the palpable object and intent of both parties as plainly indicated by the contract itself, but would seem to involve an absurdity to say that Drew could the next day after the hiring have taken away the slaves and terminated the contract as to the remainder of the term ; or, to state the proposition in a more imposing form, that he might wait until one of the slaves became sick, and when Nesbitt was most in need of the services of the other deprive him of his service and refuse to deliver him up on demand. This would be to construe the contract not as a hiring for a year, but at the pleasure of Drew, to defeat the clearly expressed object and intention of the parties by a vague, indefinite expression, and above all, it would be torturing a stipulation evidently inserted for the benefit of Nesbitt, as is clearly indicated by the context, to his disadvantage and to the benefit of Drew. That the latter is to deduct or account for the time lost by sickness or otherwise does not authorise him to violate the contract by taking away the slaves, any more than it would entitle Nesbitt to a deduction from the price, if he had capriciously sent the slaves off and dispensed with their services. When the terms of a contract are ambiguous or indefinite, they will be limited to the subject matter of the contract and to its obvious nature and design.—Story on Cont. 567, § 641, and cases cited in note 2. If the contract be defective or ambiguous in its terms, it will be liberally construed, not literally, but the law will supply whatever is necessary to effect the object and intention of the parties, (Ibid,) and will so interpret the ambiguous expression as to make it conform to

the intent.   We must then understand by the term "otherwise" in this contract, time lost by the death of the slaves, or by their disability to render service arising from any cause unmixed with the fault of the parties to the contract.   The case of Davis v. Wade, 4 Ala. 208, cited by the counsel for the plaintiff in error, is in point to sustain this construction.   This case is wholly unlike that of Merriwether v. Taylor, 15 Ala. 735; for in that case the defendant accepted the work and thereby waived the complete performance of the special agreement.

The facts of this case, as set out in the bill of exceptions, show no sufficient excuse for the withdrawal of the slave Daniel from the service of the defendant below.   There was no restriction in the contract as to the kind of labor they were to perform, but the subscribing witness thereto stated that they were hired to work as hands at the steam mill, a part of the ordinary labor about which consisted in rafting saw logs down the river to it.   It was certainly no breach of good faith nor a violation of the contract on the part of Nesbitt to employ the slaves in the labor which at the time of the hiring and long before, as the said witness states, was carried on at the steam mill.   They were employed about the business for which they were hired, according to the proof shown by the bill of exceptions, and Drew may with the same propriety insist that they should not work near the steam engine for the fear of being killed by an explosion, as that they should not assist in rafting logs for fear of being drowned.   He made no exception in the contract as to either, and both working the engine and rafting the logs constitute a part of the ordinary and necessary business of the establishment. We will not say but that there may be cases where if the person hiring the slaves puts them in perilous situations without the intention of the parties, and without the scope and purview of the contract, the owner might not be justified in abandoning the contract and reclaiming his slaves.   So in respect of the moral condition of the slave.—Hogan v. Carr & Anderson, 6 Ala. 471. But this is not shown to be one of those cases.

Judgment reversed and cause remanded.