## WOLFE vs. PARHAM.

1. When, on an appeal from a justice's court, the original papers and judgment entry are sent up, properly certified by the justice, the Appellate Court, without other proof of their execution or identity than that afforded by the justice's certificate, will look to them as evidence of what was done before him in the cause.

2. There is no error in making the affidavit, prescribed by the statute

as a pre-requisite to the issuance of a commission to take the deposition of a witness, before the clerk of the court in which the cause is pending; nor in the commissioner being directed by the commission to take the deposition on "to-morrow," the commission bearing a specific date; nor in the commissioner taking the deposition without being himself sworn, there being no such requirement in the statute.

3. Where, on the trial of the issue, whether W. is indebted to T., it is shown that W. agreed, if T. would go to Mississippi and take three slaves, and deliver them to him in Mobile, he would give him one of them, or a sum equal to one-third the value of the three, and that T., in pursuance of the contract, went to Mississippi and brought and delivered two of the slaves to W., and that W. with the assistance of T., afterwards obtained possession of the third, proof that W. subsequently filed a bill against McR., Z., and L., for the recovery of said slaves, and compromised the suit by receiving from them $1800, is not irrelevant, as it tends to show that the slaves were the property of W. and under his control, and that he had disposed of them as his own—and also to show an election on the part of W., if any thing was due to T., to pay him in money, rather than in one of the slaves.

4. If a person, employed to do a particular service, complies fully with his engagement, or partially complies, and a further compliance is waived by the employer, he cannot be deprived of his compensation by the act of a stranger, to which he is neither a party, nor privy.

5. Where a contract for service is entire, there must be a complete performance to entitle the party employed to the stipulated compensation; and the contract is said to be entire, when a gross sum is to be paid for a certain and definite consideration.

6. Where there is evidence, tending to show that a contract for service was entire, and had been but partially performed, a charge, predicated on that hypothesis, that the party, by whom the service was to have been rendered, is not entitled to recover, cannot be refused, on the ground that there is other evidence conducing to show a waiver of full performance.

7. Where one, for a stipulated compensation, undertakes to go to Mississippi and take three slaves, supposed to be in the possession of some person there, and deliver them to the owner in Mobile, no time for their delivery being fixed, the law will allow him a reasonable time within which to comply with his undertaking, and it cannot be assumed as a legal conclusion, that the acceptance by the owner of two of the slaves is a waiver of the entire fulfilment of the contract, but it should be left to the jury to determine whether, under the circumstances, such acceptance was intended as a waiver or not.

8. Where one contracts to pay for a certain service in specific property, or in money, the alternate stipulation is for his benefit, and it is for him to elect as to the mode of payment, but if he loses the property by title paramount, or voluntarily disposes of it, his election is

determined, and, the service being performed in full, or in part and waived as to the balance, he will be liable in *indebitatus* assumpsit for the monied compensation, or a reasonable part thereof.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THE defendant in error caused a summons of garnishment to be served on the plaintiff in error, requiring him to appear before a justice's court, to which the writ was returnable, and answer what he was indebted to one Albert G. Tucker. The garnishee answered and denied all indebtedness, and the defendant in error having contested his answer, an issue was made up and tried, and a judgment rendered by the justice against the garnishee. From this judgment there was an appeal to the Circuit Court, where the case was tried *de novo*. On the trial in the Circuit Court, the defendant in error, to show a judgment against Tucker, offered in evidence the papers in the suit between them before the justice and the certificate of the justice showing the rendition of the judgment. To this evidence, the garnishee objected, on the ground that a justice's court is not a court of record, but the court overruled the objection and the evidence was admitted. To prove an indebtedness from the garnishee to Tucker, he then introduced testimony to show that the garnishee employed Tucker to go to Mississippi, and take and bring to Mobile three negroes that were claimed by the garnishee, and were supposed to be in the possession of some person in that State, for which service Tucker was to receive one of the negroes, or one third the value of the three; that Tucker succeeded in bringing to Mobile two of the negroes, and that he and the garnishee afterwards got possession of the third. These facts were proved by the deposition of one Mabry, to the admissibility of which deposition the garnishee objected, "because the commission stated the deposition was to be taken to-morrow (though it bore a specific date)—because the commissioner, who swore the witness, was not himself sworn, and because the affidavit was made before the clerk of the Circuit Court." These several objections were overruled and the deposition was read. The defendant in error also offered in evidence the deposition of the Hon. E. S. Dargan, going to show that he had filed a bill in chancery in behalf of the garnishee and Mabry against M. J.

McRea, of Mississippi, and Zunts & Lang, of Mobile, for the recovery of three negroes, and that the suit was compromised by the defendants paying eighteen hundred dollars, which sum, after deducting the fee of the witness, was divided between the garnishee and Mabry—the garnishee, on the order of Mabry, receiving the largest share. The garnishee objected to this testimony on the ground of irrelevancy, but the court, upon the assurance of the counsel of defendant in error that he would show that the negroes, for which the bill was filed, were the same negroes that Tucker was employed to bring from Mississippi, overruled the objection and the deposition was permitted to be read to the jury. The garnishee proved that before the service of garnishment, M. J. McRea brought an action of detinue against him, and re-possessed himself of the negroes that had been taken by the defendant in error, and placed in his, the garnishee's possession. These are all the facts that the bill of exceptions sets out. The court charged the jury that upon the promise made by Wolfe to Tucker an action of *indebitatus* assumpsit would lie, and if they should ascertain from the evidence that the amount due Tucker by Wolfe was equal to the plaintiff's claim against Tucker, they should find for the plaintiff. The defendant asked the court to charge the jury, first, that if the negroes were taken out of his possession by action of detinue before the service of garnishment, the plaintiff could not recover; secondly, that if the contract was an entire contract to take and deliver in Mobile three negroes and Tucker delivered but two, the plaintiff could not recover. The court refused each of these charges, and in reference to the subject of the last, charged the jury that, admitting the contract to have been originally entire, yet if Wolfe took and accepted the two negroes, Tucker would be entitled to recover whatever his services for taking and restoring them to Wolfe might be reasonably worth, and to enable the jury to arrive at the proper amount to be paid for such service, they might take into consideration a *pro rata* estimate on the basis of the amount, agreed to be given for the delivery of the three negroes. To the several rulings of the court in the admission of evidence, to the charges given and to the refusal to charge as requested, the defendant below excepted and now assigns them as error.

D. SMITH, for the plaintiff in error:

1. Papers and certificate of justice of the peace were not evidence.—Bullock v. Ogburn, 13 Ala. 346; McCaskel v. Amarine, 12 ib. 17; Jones v. Davis, 2 ib. 730; Scott v. McNairy, 1 Stew. 315.

2. The evidence shows a failure of consideration, even if there was an agreement proven. Wolfe could certainly be under no obligation to give Tucker one of the negroes, if both were taken from him by legal process.

3. No judgment can be rendered for property, but for money only upon a garnishment.—Winns v. Parker & Coffman, 1 Ala. 421.

4. The evidence of Judge Dargan, although admitted for what it is worth, ought not to have been allowed to go to the jury; it has no connection with the matter in issue, and if it shows any thing, is directly contrary to claim of plaintiffs below.

5. There was no proof whether Tucker had made an election to take one of the negroes or its value. If he had elected to take one of the negroes, the presumption is that he had got one of them.

6. The deposition never could be taken; it is appointed to be taken "to-morrow,"—"to-morrow never yet rose or set on any man." An *indebitatus* assumpsit, or a garnishment, would not lie upon the contract attempted to be proven.—Walker v. McGehee, 11 Ala. 273. The commissioner who took the deposition should have been sworn; judges, jurors, attornies, witnesses, interpreters are sworn.—See Glover v. Willings, 2 Stew. & Port. 28.

If the evidence shows any contract, it is an entire contract, which has never been complied with. There is no sufficient proof of acceptance on the part of Wolfe of the two negroes, which were immediately afterwards taken from him by writ of detinue.—Wright v. Turner, 1 Stew. 29; Givhan v. Daily, 4 Ala. 336; Pettigrue v. Bishop, 3 ib. 340; Brumby v. Smith, ib. 676.

RAPIER, for the defendant:

1. The papers in a case before a justice of the peace, together with his certificate, are at least *prima facie* evidence of the judgment and proceedings before him. This court has never

Wolfe v. Parham.

decided otherwise.—See 1 Stew. 315, and other decisions cited to this point in plaintiff's brief. In cases of the trial of the right of property removed from justice's courts, executions issued by the justices have been admitted in evidence in the appellate courts, without proof of their genuineness.—1 S. & Port. 472; 3 Ala. 150.

2. An affidavit may be now made in any case, before the clerk of Circuit or County Court, for the purpose of getting a commission to take testimony.—Clay's Dig. §§ 1 and 2, p. 164, and § 14, p. 167.

3. It has never been the practice in this State to require that the commissioner appointed to take testimony should himself be sworn, nor does the statute direct it.

4. Touching the evidence of Judge Dargan, as set forth in the bill of exceptions, these principles will apply, that inferior cumulative evidence to the same point is no reason for reversing a judgment, though improperly admitted, (9 Ala. 134,) and a judgment will not be reversed because testimony unnecessary and superfluous, but which could not have misled the jury, has been permitted to be adduced by the successful party.—8 Ala. 725.

5. The charge asked in reference to the entirety of the contract was properly declined, first, because it was abstract, secondly, because it was illegal. The charge given was correct.—4 Ala. 108; Story on Contracts, 741.

6. It is deemed unnecessary to cite authority in reference to the other questions raised.

CHILTON, J.—The first question is, whether upon the trial of a contest between the plaintiff and the garnishee, upon an appeal from a justice of the peace, the court may look to the original papers, and the copy of the judgment, entered upon the justice's docket, and certified by him to the Circuit Court, for the purpose of determining whether the plaintiff had obtained a judgment against the original debtor.

The statute requires the justice, when an appeal is taken within the prescribed time, to send up to the clerk of the court, to which the appeal is taken, a statement of the case, with all the papers and the bond thereunto belonging.—Clay's Dig. 314, § 9. By the 11th section, (page 315,) it is provided, that when

such cause is removed into any court by appeal, &c., and the judgment of the justice is affirmed, judgment shall be entered against the security, as well as the principal, and execution may issue against both of them, &c. These and several other statutes, which might be refered to, show that, although the proceedings had in the cause before the justice are not, properly speaking, matters of record, yet when the papers and judgment entries are sent up, properly certified by the justice, the appellate court will regard them as papers in the cause, and will look to them, without proof of their execution or identity, further than such as the justice's certificate may afford, for the purpose of ascertaining what was done in the cause before the justice. There was, therefore, no error in regarding them as evidence of a judgment had in the cause before the justice in favor of Parham against Tucker.

2. Several objections were taken to the deposition of one Mabry, respecting the regularity of taking it, but as the bill of exceptions does not set out the affidavit, commission, or deposition, or show that the grounds of the objection were sustained by them, we cannot revise the action of the primary court upon them. We may, however, observe that the objections, so far as they are disclosed by the record, have no force in them; that it was proper to make the affidavit of the materiality of the testimony, &c., before the clerk of the court, where the suit was pending (Clay's Dig. p. 64-5, §§ 1, 2, 3 ;)—that the commission directed the commissioner to take the deposition " on tomorrow," the commission bearing a specified date, was regular; and the fact that the commissioner was not sworn furnished no reason for rejecting the deposition, as the statute does not require them to be sworn.

3. As proof of indebtedness on the part of Wolfe to Tucker, the plaintiff below introduced testimony to show that Wolfe had employed Tucker to go to the State of Mississippi, and to take and bring to him at Mobile three negro slaves, claimed by Wolfe as his property, but which were then supposed to be in the possession of some one in the State of Mississippi; and that for this service he agreed to give Tucker one of said slaves, or a sum equal to one-third the value of them. It was shown that Tucker had succeeded in taking and bringing to Mobile two of said slaves, and that afterwards Wolfe and Tucker obtained posses-

sion of the third negro, and that they all went into Wolfe's possession in Mobile. The plaintiff then offered the testimony of E. S. Dargan, which showed, that, as a solicitor in chancery, he had filed a bill for Wolfe and one Mabry against M. J. McRea, of Mississippi, and Zunts and Lang, of Mobile, for the recovery of three negro slaves, and that the parties compromised said suit, the defendants paying $1800, out of which his fee was deducted, and the remainder was divided between Wolfe and Mabry, the greater portion, however, to Wolfe. This proof was objected to on the ground that it was irrelevant, but, upon the declaration of the counsel for the plaintiff, that he would introduce proof to show that these were the same slaves brought by Tucker from Mississippi, the objection was overruled. Whether the proof proposed to be made, as to the identity of the slaves, was afterwards in fact made, the record does not disclose, but we must presume it was, otherwise the bill of exceptions would have shown it. Thus considered, we think the testimony was not wholly irrelevant, as it tended to show the slaves were the property and under the control of Wolfe, and that he had disposed of them as his own, and as showing that Wolfe elected, if any thing was due Tucker, to pay in money rather than in one of said slaves.

4. It was also shown that after the slaves came to the possession of Wolfe, one McRea obtained possession of them from him by action of detinue. The court was asked to charge that if the slaves had been taken out of the possession of Wolfe, before the service of the garnishment, then the plaintiff could not recover. This charge the court refused, and we think, very properly; for if Tucker had complied with his contract, or its full execution had been waived by Wolfe, and he had only partially executed it, he could not be deprived of his compensation by the act of a third party, to which he was in no wise privy.

5 & 6. There was some evidence, tending to prove that the contract between Wolfe and Tucker was entire, and that the latter had only partially complied with it—had taken and delivered two only of the three slaves, which he engaged to deliver to Wolfe. Without expressing any opinion as to the weight this evidence would be entitled to before the jury, we think it was sufficient to authorise the counsel for the defendant below to ask the court to charge, "that if the contract was entire, to take and

deliver to Wolfe three negroes, and Tucker only delivered two, the plaintiff was not entitled to recover." This charge was asked and refused, and we think it very clear the court in its refusal committed an error. Where the contract is entire, there must be a complete performance to entitle the party to the stipulated compensation.—Stewart v. Weaver, 12 Ala. 540; Story on Contracts §§ 480-1; Nesbit v. Drew, 17 Ala. 379; Leaird v. Davis, ib. 448; 1 Story's Eq. Juris. 470. And the contract is said to be entire when a gross sum is to be paid for a certain and definite consideration.—Story on Contracts, § 22. This charge was proper and should have been given as it was asked. That there was evidence, also, conducing to show a waiver, on the part of Wolfe, of the entire fulfilment of the contract on the part of Tucker, would render it proper for the court to give other instructions suited to this phase of the case, but furnished no ground for refusing the instruction, predicated upon the contrary hypothesis, which the proof tended to establish.

7. Such contracts may become several by the consent of the parties, either express or implied. Ordinarily, the acceptance of a part performance, without objection, is regarded as a waiver of the entire fulfilment by the other party. As if a person agrees to pay a certain gross sum for three particular slaves, to be delivered by a certain time, and the vendor, from casualty or other cause, is enabled to deliver but two, the acceptance of the two, without objection, is a waiver of the entirety of the contract, and entitles the vendor to recover their ratable value.—Story on Contracts, § 25, and cases cited in notes. But I apprehend we must look to the nature of the contract, the manner in which it is to be performed, as well as to the subject matter of it, to ascertain the effect of a partial performance upon the rights of the parties growing out of it. Where the contract provides for the delivery of ponderous articles, which according to the custom of the country are to be delivered in parcels, or by wagon loads, in such case, though the party may accept a portion thereof in the course of delivery, he is not bound to pay until the whole is delivered.—McGehee v. Hill, 1 Ala. 140. So in the case before us, considering the nature of the undertaking and the character of the property, we think that if the slaves belonged to Wolfe, when two of them were delivered, and were accepted by him, he had the right to receive them, without waiving his

right to insist upon the entire fulfilment of the contract on the part of Tucker. No time being fixed, when he should deliver the slaves, the law allowed Tucker a reasonable period within which to comply fully with his engagement, and Wolfe had the right to treat the delivery of the two as in the progress of completing the contract, and to insist upon the delivery of the third, as a condition precedent to Tucker's right to recover. Whether, however, he thus accepted them, or received them as a completion of Tucker's engagement, as far as his compliance was practicable, is a question, which, under the circumstances of this case, should have been left to the jury. It is very clear, from the evidence disclosed by this record, that the court could not properly assert, as a legal consequence of the acceptance of the two slaves, that Wolfe waived an entire compliance on the part of Tucker, thereby entitling the latter to recover a reasonable compensation for his services. Such is the effect of the charge which the court gave, and which was also erroneous.

8. But it is insisted that there is no proof that Tucker ever made his election, whether he would take one of the slaves, or a sum in money equal to one third their value, and that consequently, the interest going to him cannot be the subject of garnishment. To this we reply that Wolfe is the promissor. The stipulation to let Tucker have one of the negroes, or to pay so much in money, was intended for his benefit, and he, and not Tucker, was the party to make the election. If, therefore, the contract was complied with by Tucker, and Wolfe, either by the loss of the slaves by title paramount, or by voluntarily disposing of them in the arrangement of compromise, as deposed to by Judge Dargan, has become disabled from letting Tucker have one of the slaves, this terminates his election, and imposes on him the obligation to pay the monied compensation, for which *indebitatus* assumpsit will lie. So also, if the entire contract was waived, and a partial performance accepted on the part of Wolfe, whereby a right of action accrued to recover a reasonable compensation, then the process of garnishment lies to subject the demand to the satisfaction of Tucker's indebtedness.

Let the judgment be reversed and the cause remanded.

DARGAN, C. J., not sitting.