## M. V. BAKER v. ADA MAUD BRUNDAGE AND ANOTHER.[1]

December 3, 1915.

Nos. 19,599—(229).

**Husband and wife — sale of wife's land.**
>    1. A husband cannot make a valid contract for the sale of his wife's
>    land either as her agent or otherwise, and a contract made by him is
>    not binding upon her, unless she subsequently adopts and confirms it.

**Contract to sell land — authority of agent.**
>    2. A real estate agent can make a contract of sale only upon the
>    terms prescribed by his principal; and a contract made by him con-
>    taining other or different terms is invalid and unenforceable.

**Same — specific performance.**
>    3. Defendants authorized an agent to sell the land in controversy for
>    cash on or before February 20, 1915. On February 20 the agent exe-
>    cuted to plaintiff a contract for the sale of the land, payment therefor
>    to be made on or before 30 days from that date. *Held* that such con-
>    tract was unauthorized and cannot be enforced by plaintiff.

Action for specific performance in the district court for Crow Wing
county. Henry Spalding filed a complaint in intervention and asked
for a decree that neither plaintiffs nor defendants had any right, title
or interest in the premises described. The case was tried before Wright,
J., who made findings and ordered judgment in favor of intervener.
From the order denying his motion for amended findings or for a new
trial, plaintiff appealed. Affirmed.

*Crowell & Russell* and *C. J. Williams,* for appellant.
*Alderman & Clark,* for respondents.

TAYLOR, C.
The defendants are husband and wife, and the wife was the owner
of a tract of land in Crow Wing county in this state encumbered by
two mortgages. One of the mortgages had been foreclosed, and the

[1]Reported in 154 N. W. 1086.

time to redeem from the foreclosure sale would expire on March 2, 1915. In September, 1914, negotiations were entered into between the husband and J. M. Quinn, a real estate agent at Brainerd, for the sale of the land by Quinn subject to the mortgage claims. On February 10, 1915, defendants sold the land to one Welchel, and he . thereafter sold it to the intervener Spalding. On February 20, 1915, Quinn, as agent of defendants, executed a written contract to plaintiff, agreeing to sell and convey the land to plaintiff. Defendants at once repudiated this contract, and plaintiff forthwith brought this action to enforce specific performance thereof. Spalding, claiming to be the owner of the land, intervened and asserted his title thereto. Plaintiff asserted that the sale to Welchel was not consummated until after he, plaintiff, had purchased the land through Quinn, and that the rights of Welchel and Spalding are subject to his rights under the Quinn contract. The trial court held that plaintiff had no valid contract for the purchase of the land; that the intervener was the owner thereof, and directed judgment for the intervener. Plaintiff moved for amended findings or for a new trial, and appealed from the denial of this motion.

Plaintiff bases his claim to the land upon the contract made by Quinn; and the first question that presents itself is whether this contract is binding upon the defendants. If it is not, and cannot be enforced against them, plaintiff has no cause of action, and the disposition of the land made by them is no concern of his. It becomes necessary, therefore, to consider the authority possessed by Quinn, and the nature and extent of the obligations he attempted to impose upon defendants.

The defendants resided in Vancouver, British Columbia, and Quinn resided at Brainerd in this state. The negotiations between them were conducted wholly by letters and telegrams; and, until the telegram of February 10, 1915, hereafter referred to, were wholly between Quinn and C. W. Brundage, the husband of the owner. By virtue of section 7147, G. S. 1913, the husband could not make a valid contract for the sale of his wife's land, either as her agent or otherwise. Betcher v. Rinehart, 106 Minn. 380, 118 N. W. 1026; Van Brunt v. Wallace, 88 Minn. 116, 92 N. W. 521; Sutton v. Brekke, 117 Minn. 519, 134 N.

W. 289. Consequently the negotiations between Quinn and C. W. Brundage were not binding upon Ada M. Brundage, except to the extent that she subsequently adopted and confirmed them. Betcher v. Rinehart, 106 Minn. 380, 118 N. W. 1026.

Brundage had asked $2,000 for the land subject to the mortgages. On November 4, 1914, Quinn wrote: "It seems that the best I can do on this deal is to get you $1,500 cash;" to which Brundage replied on November 16, offering to take $1,700. On January 23, 1915, Quinn telegraphed an offer of $1,000. On the next day Brundage replied by telegraph: "I will not accept $1,000 but will accept $1,500 as agreed in your letter." On February 9 Brundage telegraphed: "If $1,500 accepted wire answer, selling tomorrow Seattle." In reply Quinn telegraphed by night letter on the evening of the ninth: "My party says he will have $1,500 to close the deal on or before twentieth; am working hard on deal and no doubt it will be closed Feb. 20, $1,500 net to you for equity. Hold Seattle man off, you will hear from me soon." This telegram appears to have been received by Mrs. Brundage, as Brundage had left Vancouver for Seattle before it was delivered, and there made the contract with Welchel on the evening of the tenth. A deed executed by defendants in blank as to the grantee, together with a copy of an abstract and other papers, had been forwarded in November to a bank in Brainerd for delivery to Quinn on payment of the purchase price. Apparently Brundage, when he made the contract with Welchel, telegraphed the bank to return these papers. On the night of February 11, Quinn telegraphed Brundage: "Our bank got wire to return papers Gull Lake land. I wired you Feb. 9 that deal would be closed by 20th. I must have time to close deal or else collect commission from you. Have gone to much expense on this deal. Have rights as agent. Answer." On the twelfth, Mrs. Brundage telegraphed: "Brundage is out of town. Your wire of 9th been forwarded. Your wire received this a. m. Re Gull Lake land papers to be returned. Hold papers and close deal on or before February 20th. Will hold Seattle man off until that date." On February 20 Quinn made the contract with plaintiff now in controversy. On the evening of that day he wired Mrs. Brundage: "Your Gull Lake land sold today. $100 earnest money deposited First National Bank here, $1,400 to be paid soon as abstract

examined and title accepted. Have your bank instruct bank here to accept the $1,500. You make new deed in name to Marvin V. Baker and Hatty O. Seaton." On February 27 Quinn inquired by wire why the deed had not been sent and the bank instructed to receive the money. On the next day Mrs. Brundage wired him, repudiating the contract for the reason that the $1,500 had not been paid on the twentieth. The telegram of the twelfth and this telegram repudiating the contract are the only communications from Mrs. Brundage to Quinn. While we have perhaps gone into unnecessary detail in giving the transactions between defendants and Quinn, they make it clear that, even if we concede that Quinn had authority to make a written contract, which is doubtful (see Larson v. O'Hara, 98 Minn. 71, 107 N. W. 821, 116 Am. St. 342, 8 Ann. Cas. 849), such authority was limited to the making of a contract by which defendants would receive $1,500 in cash on or before February 20.

This brings us to a consideration of the terms of the contract which Quinn in fact executed, and upon which plaintiff relies to establish his right to a conveyance of the land. The contract expressly provides that it is made "subject to the owner's approval;" and plaintiff admits that Mrs. Brundage repudiated it instead of approving it. The contract acknowledges the receipt of $100 by Quinn as earnest money, and then provides for the payment of $1,400 and the conveyance of an equity in two lots in Minneapolis "on or before 30 days after date hereof, or as soon thereafter as a warranty deed conveying a good title to said land is tendered."

It is well settled that a real estate agent, or broker, can make no contract for the sale of the land of his principal, except upon the terms prescribed by such principal; that without express authority to give credit, or to receive something other than cash, he can sell only for cash, and that any contract made by him, which contains terms or provisions other than those prescribed by his principal, is not binding upon such principal and cannot be enforced by the purchaser. Jackson v. Badger, 35 Minn. 52, 26 N. W. 908; Marble v. Bang, 54 Minn. 277, 55 N. W. 1131; Hornsby v. Hause, 35 Minn. 369, 29 N. W. 119; John Gund Brewing Co. v. Tourtelotte, 108 Minn. 71, 121 N. W. 417;

Spengler v. Sonnenberg, Ann. Cas. 1914D, 1083 [88 Oh. St. 102, 102 N. E. 757, 52 L.R.A.(N.S.) 510] and cases cited in note appended thereto.

By the terms of the contract in question plaintiff was given 30 days in which to pay $1,400 of the purchase price. Quinn had no authority to make such contract; it is not binding on the defendants, and plaintiff has no cause of action.

Order affirmed. ————————