# CHARLES B. WESTFALL v. FRANK M. ELLIS.[1]

## January 10, 1919.

## No. 21,028.

**Vendor and purchaser — construction of contract.**

1. The contract between the parties to this action should be construed to be one of sale and not one for an exchange of properties.

**Same — when payment may be in property or in cash.**

2. The fact that payment may be made in property or in cash, at the option of the purchaser, is not controlling in determining whether a contract is one of sale or barter and exchange.

**Authority of joint owner to sell.**

3. A contract which authorizes one of two parties who are joint owners of property to sell the same, authorizes a sale for cash only, unless it expressly provides for a different disposition of the property.

**Vendor and purchaser — construction by parties.**

4. The contract under consideration here is not so ambiguous as to make applicable the rule that the parties thereto, by their acts, might place a practical construction upon it not borne out by the language of the contract itself.

**Same — consent to modification of contract — evidence.**

5. Evidence considered and *held* sufficient to justify the jury in finding that plaintiff did not consent to a modification of his contract with defendant, whereby the latter was authorized to exchange goods, in which they were jointly interested, for land.

**Same — alternative performance — effect of disability.**

6. Where there is a provision in the alternative to do one or the other of certain things, and the promisor, by his own act, disables himself from performing one of the alternatives, the other becomes a fixed obligation.

**Measure of damages.**

7. The trial court correctly instructed the jury as to the measure of damages.

Action in the district court for Hennepin county to recover $14,800

[1]Reported in 170 N. W. 339.

for breach of contract. The facts are stated in the opinion. The case was tried before Rockwood, J., who when plaintiff rested and at the close of the testimony denied defendant's motions for a directed verdict, and a jury which returned a verdict for $14,235.73. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*George T. Simpson* and *Hall, Alexander & Purdy*, for appellant.

*J. B. Faegre* and *Wilbur H. Cherry*, for respondent.

LEES, C.

Prior to December 4, 1915, plaintiff was the owner of an apartment house in Minneapolis and of 160 acres of land in Renville County, North Dakota. The property was heavily encumbered. Defendant was in control of the Ellis-Hall Company, a corporation engaged in the mercantile business at Brookings, South Dakota. The parties met at Minneapolis and entered into negotiations which were concluded at Brookings on December 4, 1915, by the execution of a contract between them. In substance the contract provided that plaintiff should sell and convey to defendant his real property at a consideration of $40,000 for the apartment house and $15,800 for the Dakota land, and should transfer to him two mortgages amounting to $4,000; that the encumbrances against the real estate should be deducted from the purchase price to be paid therefor; that the estimated amount of the encumbrances as to the apartment house was $34,000 and $11,000 as to the Dakota land, and that plaintiff's equity was $6,000 in the house and $4,800 in the land. The contract sets out the obligations of the defendant substantially as follows:

The Ellis-Hall Company was to continue to conduct the department store at Brookings until about March 15, 1916, in order that the stock might be reduced to about $50,000. An inventory of the stock and fixtures was then to be taken, from which their value should be determined. Thereupon defendant was to pay plaintiff, either in cash or in merchandise and fixtures at the valuations shown by the inventory and at the option of the defendant, "the amount of the equity of the party of the first part in said real estate and the said mortgages at their face value and interest accrued thereon * * * estimated at" $14,800. Then follows a provision that the stock and fixtures, after the **inventory is**

taken, "may be sold in bulk, or otherwise, by the Ellis-Hall Company * * * to such purchaser or purchasers, and at such price as said Ellis-Hall Company may desire, and in the event that the amount realized therefor shall be sufficient to realize the full invoice value, with freight and express added, on such stock as so invoiced and estimated at" $50,-000, "then the full amount of the equities in said real estate and the face value of said notes and mortgages, including interest, shall be paid to the first party and the remainder of said proceeds retained by said Ellis-Hall Company. In the event, however, that the amount thus realized for said reduced stock and fixtures shall be insufficient to pay the full invoice value, with freight and express added, or less than" $50,000, "then in that event such deficiency shall be deducted from the amount which the party of the first part would otherwise receive as hereinbefore provided, and there is also to be deducted from such amount all commissions and expenses which the party of the second part or Ellis-Hall Company may incur in their efforts to sell and dispose of the remainder of said stock after it has been reduced as above provided."

The contract further provides that if defendant, or the Ellis-Hall Company, shall be unable to dispose of the reduced stock of goods within a reasonable time after March 15, 1916, plaintiff and defendant, by mutual agreement, may either divide the remaining stock and fixtures or agree upon some other method of adjusting their respective rights under the contract.

The Ellis-Hall Company had a special sale, and early in March, 1916, took an inventory of the reduced stock and fixtures, which showed their value to be $45,854.24. Between December 4, 1915, and the date when the inventory was taken, plaintiff transferred the real property and the two mortgages to defendant as provided in the contract. The agreed value of the property so transferred, after deducting all encumbrances against it and some small cash payments made by the defendant, was $12,953.33. It is admitted this amount has not been paid.

On or about March 8, 1916, defendant disposed of the entire stock and fixtures then remaining by transferring the same to one Cobel, receiving from him therefor a deed to a half section of land in Johnson County, Nebraska, and $7,700 in cash. In the transaction between defendant and Cobel the land was taken at a valuation of $150 per acre. It was

mortgaged for $12,000. The net amount received by defendant in money and land, at the agreed valuation, was $43,700, or $2,154.24 less than the value of the stock and fixtures as shown by the inventory. Defendant testified that before making this exchange he informed plaintiff of what he proposed to do and obtained his consent thereto. On the other hand, plaintiff denies that he ever sanctioned the exchange or gave it his approval. Defendant took the deed to the Nebraska land in his own name and kept the $7,700, but offered to execute an instrument showing that plaintiff had an interest in the land. Asserting that, by his conduct in thus disposing of the stock and fixtures, defendant had put himself in a position where he could only perform the terms of the contract by paying cash for the property plaintiff had transferred to him, this action was brought upon a complaint setting forth the contract, alleging its breach, and demanding judgment for $14,800 as damages.

The answer sets forth the exchange of the stock and fixtures for the Nebraska land and money, and alleges that it was agreed that, when the land was sold, whatever amount was due plaintiff, if any, under the contract should be paid to him after deducting the difference between the price at which the stock and fixtures were sold, viz., $43,700, and their value as fixed by the inventory of March 8, 1916, and that defendant held the title to the Nebraska land for the benefit of plaintiff to the extent of his interest under the contract in the proceeds which might arise from its sale.

1. The contract was construed by the trial court as one for a sale instead of one for an exchange of properties, and the case was tried throughout on the theory that this was the proper construction to be placed upon it. Defendant insists that this construction was wrong. If so, there was error in the trial which would necessitate a reversal of the order appealed from. The case turns upon the question which of the two constructions should be placed upon the contract. We construe it to be one of sale. Plaintiff agreed to sell and convey his property at a price in money fixed by the contract. Defendant did not obligate himself to pay in money only. He reserved the right to turn over, in payment therefor, merchandise and fixtures of the Ellis-Hall Company at their inventoried value, to an amount equal to the price set upon plaintiff's property. That payment may be made in something other than money is not a

controlling factor in determining whether a contract is one of sale or for the exchange of property. Niebels v. Howland, 97 Minn. 209, 106 N. W. 337; Fagan v. Hook, 134 Iowa, 381, 105 N. W. 155, 111 N. W. 981. The rule is stated in Tiedeman, Sales, § 12, as follows:

"The consideration must be a price in money. Although it has been sometimes held that a sale must be a transfer for money, and that every other transfer is an exchange or barter, the better opinion is that the transaction is still a sale, although the transfer is made for something else than money, provided each article is transferred at an agreed or the market value, so that the one thing is received in payment of the price of the other. For example, a contract to deliver or exchange thirty bushels of corn at twenty-five cents per bushel for ten bushels of wheat at seventy-five cents per bushel, would be a sale, for the price of the corn would be liquidated by the acceptance of the wheat. * * * The criterion * * * is whether there is a fixed price, as determination of the value at which the things are to be exchanged."

The Uniform Sales Act is in force in many of the states. Its provisions throw light upon the point under consideration. The act is in substance a codification of the rules of the common law applicable to contracts of sale. It provides that in such a contract "the price may be made payable in any personal property." See Williston, Sales, § 166. The idea sometimes expressed by text writers that, unless the price is payable in money only, there is no sale but merely a barter or exchange of one article for another, is not in accordance with this provision of the act or with the weight of authority.

2. Appellant contends that, by the terms of the contract itself, he had authority to exchange the stock and fixtures for the Nebraska land. We find nothing in its provisions authorizing defendant to dispose of the stock and fixtures except by making a sale thereof. Authority to sell property is authority only to sell for cash unless otherwise expressly provided. Marble v. Bang, 54 Minn. 277, 55 N. W. 1131; Baker v. Brundage, 131 Minn. 299, 154 N. W. 1086. The word "sell" is not synonymous with "barter" or "dispose of." It involves a money transaction. J. I. Case T. M. Co. v. Loomis, 31 N. D. 27, 153 N. W. 479, and cases cited at page 481.

3. A further contention is that the parties placed a practical construc-

tion upon the contract, in that in January, 1916, plaintiff agreed to execute a contract with one Banks for the exchange of real estate in North Dakota for the stock and fixtures of the Ellis-Hall Company. An unsigned agreement for such exchange was offered in evidence by defendant. Plaintiff's objection to it was sustained. We think the court's ruling was right. "The rule of practical construction applies only in cases where the contract is indefinite, uncertain, or susceptible of different interpretations." Schwab v. Baremore, 95 Minn. 295, 104 N. W. 10. The contract here is so clear and unambiguous as to forbid the application of the rule. Were it otherwise it would not follow that, because plaintiff may have given his approval to the proposed exchange with Banks, he treated the contract as one which authorized defendant to make an exchange with anyone for any kind of property and upon any terms that he saw fit. Defendant himself seems to have been doubtful of his right to exchange the goods for land. According to his testimony he did not attempt to do so until after he had asked for and obtained plaintiff's consent. If the contract gave him authority to make the trade with Cobel, it was unnecessary to plead or prove that he had express authority to make it, or to prove that a practical construction had been placed upon it, giving him authority which the contract itself did not confer.

4. The views we have expressed lead to the conclusion that only by showing that plaintiff consented to or approved of the Cobel trade could defendant succeed in defeating a recovery. Sufficient evidence was produced to justify the jury in finding that plaintiff did not give his consent or approval, but it is urged that in submitting this issue to the jury there was error in the instructions given or refused. In substance the jury was instructed that the defendant must show by a fair preponderance of the evidence: First, that he procured the assent of the plaintiff to the making of the Cobel trade; and, second, that he made it in the way in which plaintiff had outlined it and placed himself in a position where he could accord to plaintiff rights in the land taken, which the latter had agreed to accept. Appellant contends that, if the jury found that plaintiff consented to the making of the Cobel trade, there arose a new contract between the parties, and if defendant failed to carry it out as directed by plaintiff, that would not be a breach of the old con-

tract but of the new one, and hence plaintiff's cause of action must be founded on the latter and not on the former. It is our opinion, that if the jury accepted defendant's version of the conversations and correspondence he had with plaintiff relative to the proposed trade with Cobel, a modification of the old contract was agreed upon. The contract itself was not superseded by a new one, but continued to be in force and effect. To be enforceable, a contract requires a consideration to support it, even though it be only a modification of an existing contract. Little v. Rees, 34 Minn. 277, 26 N. W. 7; 13 C. J. § 607. There would be no consideration to support the alleged modification of the contract, unless defendant obligated himself to consummate the trade with Cobel. Clearly he did not do this. At most he obtained the consent of plaintiff to the performance of the original contract in a different manner from that originally stipulated. Cannon River Mnfg. Assn. v. Rogers, 46 Minn. 376, 49 N. W. 128, is here in point. If plaintiff gave his approval to the Cobel trade, paraphrasing the language of the court in the case cited, it amounted to nothing more than an offer on his part requiring performance by defendant to render it effectual. There was no new contract entered into which became a substitute for the old one and, therefore, operated as a satisfaction.

5. It is probably true that when the contract was made neither party intended that plaintiff should be paid for the property he was to transfer to defendant, until after the stock of goods had been sold and converted into money. Possibly plaintiff is seeking payment before he would have been entitled to it under the terms of the contract, but if defendant has been placed in a position where he can be compelled to pay, although he has not yet received in money the entire consideration for which he disposed of the stock, he alone, according to the verdict of the jury, is responsible for the predicament in which he finds himself. He took the position at the trial that the contract had been modified and that he obtained plaintiff's consent to the making of the trade with Cobel. He failed to have the alleged new arrangement reduced to writing and signed by plaintiff, who testified that in fact no such arrangement was ever made. The jury found against his contention. He was represented by able and experienced counsel. The trial court has approved of the verdict. We cannot interfere to relieve defendant from the consequences

of his own acts. In disposing of the goods to Cobel, he put it out of his power to perform the contract by turning over to plaintiff any portion of such goods. Thereafter he could discharge his obligation only by the payment of money.

It is a general rule that, where a promise is in the alternative to do one or the other of certain things, the promisor ordinarily has the right to elect which one of the alleged promises he will perform, but, if he disables himself from performing one of the alternatives, the other becomes a fixed obligation. In considering a case similar to the one before us, this court said: "This amount he had the option, under the contract, to discharge in land or money. He did not exercise his option to discharge the liability in land, hence it became a money demand." Fitzhugh v. Harrison, 75 Minn. 481, 487, 78 N. W. 95, 97. In Irving v. Bond, 76 Neb. 293, 107 N. W. 585, it was held that when one has an option to pay in money or by the transfer of property and voluntarily deprives himself of the power to make the transfer, his obligation to pay cash becomes absolute. In Beckwith v. Sheldon, 168 Cal. 743, 145 Pac. 97, Ann. Cas. 1916A, 963, a party to a contract had the right to discharge his obligation in money or by the delivery of bonds in a corporation within a fixed time. Failing to deliver the bonds within such time, an action was brought to recover a money judgment. The court said, quoting Freeman's note in 21 Am. Dec. 425, there is a diversity of opinion as to how agreements to pay a sum of money in specific articles at a fixed rate shall be construed in case of failure to furnish them within the time specified. One line of cases holds that such contracts are agreements for the delivery of specific property, in which case the remedy of the promisee is by action for damages and the value of the articles is material, but the greater weight of authority is in favor of the doctrine that, upon the failure to deliver the articles within the time provided, the contract becomes an obligation to pay the sum of money mentioned, and may be sued on as such and the value of such articles is immaterial. The statement made by this court in Fitzhugh v. Harrison, supra, and the rule adopted in the Nebraska and California cases above cited, find support in the following cases: Monnett v. Monnett, 46 Oh. St. 30-37, 17 N. E. 659; Murphy v. Dernberg, 84 App. Div. 101, 82 N. Y. Supp. 585; Wolfe v. Parham, 18 Ala. 441.

6. The final questions raised by the assignments of error relate to the measure of damages. Testimony was introduced in defendant's behalf showing that the stock of goods was worth not to exceed 75 per cent of its inventoried value. This testimony was struck out on plaintiff's motion and the jury instructed in effect that, if they found for plaintiff, their verdict must be for the stipulated value of the property plaintiff had transferred to defendant. We think there was no error in this. By the construction we have placed upon the contract, plaintiff's damages are not to be fixed by the value of the Nebraska land, because the jury has found that he did not agree to receive an interest in it as payment of the amount due him; nor by the actual value of the stock of goods which was traded for the land because defendant could not make payment in goods after he had disposed of them; nor is a recovery to be limited by the amount received on a sale of the goods because defendant did not sell them. It follows that it was immaterial whether defendant took the land at a valuation greater than it would sell for or whether the goods were of the value at which they were inventoried. We have examined the cases cited in appellant's brief on the question of damages. They are distinguishable from this case upon the facts. Here we have a contract of sale. In the cases cited the contracts were for an exchange of properties. Other assignments of error do not require discussion. We have examined them and find no error in the record. The order refusing to grant a new trial is affirmed.