[Civ. No. 4947. First Appellate District, Division Two.—September 25, 1924.]

## FRED. W. WEHNER, Respondent, v. WILLIAM WEHNER, Appellant.

[1] FRAUD—SALE OF INTEREST IN VINEYARD—DAMAGES—CONFIDENTIAL RELATIONS—EVIDENCE.—In an action for damages for fraudulent representations which were alleged to have induced the sale of plaintiff's interest in a vineyard to defendant at a sum greatly below its actual value, where the evidence showed that plaintiff and defendant were not only partners in the vineyard business, but that they were also brothers, that plaintiff was inexperienced in the business in which they were engaged, that defendant had been engaged in the business of raising grapes and managing vineyards for over thirty years and had originally planted the vineyard involved in the action, and that plaintiff relied upon and trusted his brother in all matters pertaining to the partnership venture, an actual relationship of trust and confidence between the parties, apart from the fiduciary relation created by law and arising out of their relationship as partners, was established.

[2] ID. — CONFIDENTIAL RELATIONS — FAIRNESS, GOOD FAITH, AND ADEQUACY OF CONSIDERATION—BURDEN OF PROOF.—In such action, an actual relationship of trust and confidence between the parties, apart from the fiduciary relation created by law and arising out of their relationship as partners, having been established, the burden of proving fairness, good faith, and adequacy of consideration for the transfer of plaintiff's interest to defendant devolved upon the latter.

[3] ID.—BURDEN OF PROOF—EVIDENCE.—In such action, the defendant failed to sustain the burden of proving fairness, good faith, and adequacy of consideration for the purchase of plaintiff's interest.

[4] ID.—REPRESENTATIONS—EVIDENCE.—In such action, in view of defendant's sale, after his purchase of plaintiff's interest, of the entire vineyard for a sum greatly in excess of that which defendant's purchase from plaintiff was based on, and defendant's statement to his purchaser that his brother was not to be seen because of ill health when the latter was in perfect health, and also his concealment at first of the price he had received for the vineyard and

2. Burden of proving fairness of transaction, notes, 1 Ann. Cas. 809; Ann. Cas. 1912A, 711. See, also, 12 Cal. Jur. 818; 12 R. C. L. 427.

then his misstatement of the price received, representations by defendant to plaintiff, made prior to the agreement by plaintiff to sell his interest to defendant, as to the worth of the vineyard, and concealments by defendant, during the same period, as to negotiations and offers by others for the purchase of the property at a sum greatly in excess of that which defendant represented to plaintiff it was worth, were sufficient to entitle the plaintiff to recover, most especially when there rested upon the defendant the duty of the utmost good faith and fair dealing with his brother and partner.

[5] ID. — EVIDENCE — GOOD FAITH. — In such action, all circumstances connected with the transaction alleged to be fraudulent were admissible in evidence, and the developments in the transaction which occurred after the agreement of plaintiff to sell his interest to defendant became pertinent and illuminating upon the motives and the good faith of the statements made prior to the making of such agreement.

[6] ID. — ERRORS OF PROCEDURE — EFFECT UPON JUDGMENT. — Alleged errors in procedure in the admission and rejection of evidence cannot have great weight and are to be disregarded upon appeal where from an examination of the evidence substantial justice has been done by the trial court's judgment.

[7] ID.—HOSTILITY OF WITNESS—EVIDENCE.—In such action, the refusal of the trial court to permit an examination into collateral issues in order to demonstrate the unfriendliness of a witness (the purchaser of the entire vineyard) toward the defendant was not reversible error, where the witness did not deny that he was biased or prejudiced against defendant, and it was shown that he had quarreled with defendant and had obtained a judgment against him in other litigation, and the jury could not but have known that his feelings toward the defendant were   not cordial.

[8] ID.—ISSUES—EVIDENCE.—In such action, where the complaint alleged that the plaintiff reposed confidence and trust in the defendant, and this allegation was denied, the circumstances surrounding the formation of the partnership were pertinent upon this issue, for they showed that the plaintiff gave the defendant about fifteen thousand dollars in money, without any receipt for the same and without any definite understanding as to what his share would be in the enterprise, and that he relied entirely upon the defendant's judgment in the purchase of the vineyard.

[9] ID.—WAIVER OF FRAUD.—In such action, plaintiff did not waive the fraud by collecting the promissory note given by defendant in

---

5. See 12 Cal. Jur. 823, 830; 12 R. C. L. 429.

6. See 2 Cal. Jur. 1020, 1022; 2 R. C. L. 247, 253.

7. See 28 R. C. L. 615.

9. See 12 Cal. Jur. 792; 12 R. C. L. 411.

payment of plaintiff's interest and by applying certain collateral on the payment of said note.

[10] ID. — MEASURE OF DAMAGES. — In such action, the damages to which plaintiff is entitled are based upon the difference between the market value of the land obtained by the defendant and what he fraudulently induced the plaintiff to accept for the same, the selling price obtained by defendant from a third party being merely evidence as to the market value of the land at the time of the fraud.

---

(1) 26 C. J., p. 1159, sec. 72. (2) 27 C. J., p. 46, sec. 171. (3) 27 C. J., p. 65, sec. 199 (Anno.). (4) 27 C. J., p. 70, sec. 205. (5) 27 C. J., p. 57, sec. 189. (6) 4 C. J., p. 964, sec. 2948, p. 969, sec. 2952, p. 1004, sec. 2986. (7) 4 C. J., p. 1011, sec. 2994. (8) 27 C. J., p. 58, sec. 192. (9) 27 C. J., p. 25, sec. 137. (10) 27 C. J., p. 92, sec. 242, p. 108, sec. 269½.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Courtney L. Moore and W. A. Beasley for Appellant.

Louis V. Crowley, Maurice J. Rankin and James P. Sex for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment for $26,666 against him in an action brought by his brother Fred W. Wehner, to recover damages for alleged fraudulent representations made to him by the defendant and alleged to have induced the sale of plaintiff's interest in certain real property to the defendant at a sum greatly below its actual value.

A very earnest contention is made by appellant, supported by able briefs and a painstaking oral analysis of the record, that the evidence does not support the verdict; that there is nothing upon which to base the implied findings of the jury.

As previously stated, plaintiff and defendant are brothers.

---

10. Measure of damages for false representations in sale of real estate, notes, 8 L. R. A. (N. S.) 804; 16 L. R. A. (N. S.) 818. See, also, 12 Cal. Jur. 843; 12 R. C. L. 454.

On July 14, 1919, they purchased, jointly, the Lomas Azules Vineyard, containing 335 acres, situated in the county of Santa Cruz, California. From that date until July 5, 1920, they held and operated this property as co-owners and co-partners, and on July 5, 1920, the defendant purchased the interest of the plaintiff in the partnership property. Prior to the date of said purchase, on June 26, 1920, the parties entered into the following agreement:

"It has been agreed by W. Wehner and F. W. Wehner that either of them will take as a price in full for his interest in the Lomas Azules Vineyard and plant as described in deed at the rate of one hundred and eighty thousand dollars if tendered by one to the other, subject to an incumbrance of $66,666 and interest thereon. Evergreen. June 26, 1920.

"W. WEHNER.

"This agreement is null and void after Aug. 1st, 20.

"F. W. WEHNER."

It was pursuant to the foregoing contract that the purchase and sale of plaintiff's interest was made on July 5, 1920.

Before discussing the evidence in detail it may be well to dispose of the first controversy between the parties. Appellant contends that the agreement of June 26th, being a valid contract which would have been enforced by the courts, necessarily severed any fiduciary relationship between the parties, and the duty to disclose ceased as to facts occurring after that date. Respondent contends for the later date, July 5th, the date when William Wehner exercised his option to purchase and the partnership was actually dissolved. We find it unnecessary to pass upon this question for the reasons that will appear hereinafter. For the purposes of this appeal, we shall accept the appellant's position as correct.

Not only were the parties partners, which relationship imposed upon the defendant the duty of exercising the highest good faith in all proceedings connected with the partnership, but they were brothers, and the plaintiff was inexperienced in the business in which they were engaged, while the defendant had been engaged in the business of raising grapes and managing vineyards for over thirty years and had originally planted the vineyard which is involved in this litiga-

tion. Furthermore, the record contains not only the statement of the plaintiff that he relied upon and trusted his brother in all matters pertaining to this partnership venture, but it is replete with incidents which demonstrate that he did so trust and rely upon his brother. [1] So we begin with the establishment of an actual relationship of trust and confidence between the parties, apart from the fiduciary relation created by law and arising out· of their relationship as partners. (Civ. Code, secs. 2410, 2411.) [2] It then follows that the burden of proving fairness, good faith, and adequacy of consideration for the transfer devolves upon the defendant. (*Cox* v. *Schnerr,* 172 Cal. 371 [156 Pac. 509]; *Bacon* v. *Soule,* 19 Cal. App. 428, 434 [126 Pac. 384].) In *Cox* v. *Schnerr, supra,* it was said: "The burden of proof usually rests upon the person asserting fraud, but when one bases a claim upon a contract obtained from a person to whom he stands in a relation of trust and confidence, it becomes his task to prove that he exhibited that *uberrima fides* which removes all doubt respecting the fairness of the contract. And this rule . . . applies in every case where there has been a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding. (2 Jones on Evidence, ed. of 1913, sec. 190.)

"In every transaction of this kind, one who holds such confidential relation will be presumed to have taken undue advantage of the trusting friend, unless it shall appear that such person had independent advice and acted not only of his own volition but with full comprehension of the results of his action."

[3] It unquestionably appears from the record that the defendant failed to sustain this burden. As to adequacy of consideration, the record discloses that the property was worth from $260,000 to $275,000 at the time defendant purchased it at the rate of $180,000, and it also appears that about April or May, 1920, a broker dealing especially in vineyards came to San Jose to see defendant because he had heard that his vineyard could be purchased for about $225,000. Defendant explained to him the nature of the property, the varieties of grapes, etc., and stated that he "might consider $250,000" for the property. He also stated that he had been in consultation with a syndicate in San

Francisco that was contemplating buying the vineyard at about that figure. Notwithstanding the fact that the defendant had made these statements, and notwithstanding the fact that the property at that time was actually worth $250,000, according to the expert testimony appearing in the record, and that defendant from his experience and information must have known this, we find him stating to his brother at the time the agreement of June 26, 1920, was signed by plaintiff, and in the negotiations leading up to the same, that the vineyard could not be sold; that no buyer was obtainable and a corporation would have to be formed; that $150,000 or $160,000 was a big price for it. When the price of $180,000 was discussed defendant told his brother "that this price was a joke, that he could never get that. He kind of swung his jaw around and said, 'There is no use of me trying, I cannot get that, that is unreasonable.'" Defendant also stated that he wanted to sell the vineyard on account of his failing health, and the plaintiff agreed to sell it because of this condition and defendant said, "he thought he could get one hundred and fifty thousand dollars and might try to get one hundred and sixty thousand, but he didn't think he could, and he said he was ashamed to ask one hundred and sixty thousand dollars. That was on June 26th."

The significance of these representations is made apparent by the evidence that after the interview between the broker and the defendant, heretofore referred to and stated to have occurred in April or May, 1920, these parties met again, which meeting is placed by the broker at about four or five weeks before July 7th—let us say June 7th. At that meeting, which it will be recalled was two weeks before the contract with plaintiff was entered into, and at a time when defendant was asserting to his brother that the property was not worth $160,000, defendant said: "I want two hundred and sixty thousand dollars." Defendant never told his brother of this interview nor of asking $260,000 for the property. Following up these negotiations between the defendant and the broker, the broker introduced to defendant, Mr. Kellerman, a prospective purchaser. The testimony is that on that date Kellerman agreed to buy the vineyard for $260,000 but the consummation of the transaction was de-

layed by the defendant, who stated that he wished to see his brother first. And it appears that the actual completion of the transaction with his brother was not completed until a day or so later.

Defendant also stated to his brother and to his brother's wife "that the vines were drying and he was afraid there would not be any crop; that they would not mature, and he said that there was a good many grapes that died and he showed me different grapes with a little red leaf on them and he said: 'Do you see that little red leaf? About twenty years ago that same thing started and killed all the vines on the west side and is likely to do the same thing.' This was about May or June, 1920, and he told me so quite a number of times and I believed him. I did not know anything about vines and they looked all right to me. He showed me the vines and told me that they were in the condition that I have testified. He told me in both May and June."

The full significance of this testimony is only apparent when it is pointed out that in court proceedings between the defendant and one Kellerman the defendant testified that the vines were in good condition and were not diseased at the time in question.

[4] In view of the subsequent developments, which were properly in evidence as throwing light upon the good faith of the defendant, we think the foregoing representations and concealments were sufficient to entitle the plaintiff to recover, most especially when there rested upon the defendant the duty of the utmost good faith and fair dealing with his brother and partner.

[5] All circumstances connected with a transaction alleged to be fraudulent are admissible in evidence in an action of this kind, for, as has been said: "The truth is to be discovered more often from circumstances, from the interests of the parties, from the irregularities of the transaction." (*Casey* v. *Leggett*, 125 Cal. 671 [58 Pac. 264].) "In all cases it is permissible to prove fraud by circumstances and in most cases, it is the only evidence available." (*Maxson* v. *Llewelyn*, 122 Cal. 198 [54 Pac. 732].) The developments in the transaction into which we are inquiring, which occurred after June 26th, become pertinent then and illumi-

nating upon the motives and the good faith of the statements made prior to June 26th, and such matters are properly in evidence for this purpose, and, therefore, it is immaterial for the purposes of this appeal whether we consider June 26th or July 5th as the date before which the actual representations must have been made, since those made before the earlier date are sufficient, under all the facts and circumstances, to support the judgment, especially in the light of the later developments, which are strong circumstantial evidence of fraud.

On July 20, 1920, a formal contract was entered into between defendant and Kellerman for the purchase and sale of the vineyard for $260,000, defendant having previously purchased his brother's interest upon the basis of $180,000, as herein narrated. While negotiations with Kellerman were going on, Kellerman went to the vineyard and, after examining it, asked to see Fred Wehner about the sale, but defendant told him that Fred was not to be seen, as he had had a stroke of paralysis and was very ill. Both Mr. Kellerman and the broker, who was present, testified to these facts, while the record shows that at this time Fred Wehner was in perfect health, and the purpose of this statement by defendant must have been to prevent Fred from learning the price asked for the vineyard. Defendant did not tell his brother that he had received $260,000 for the property, and when his brother later saw a notice of the transfer in a newspaper, and plaintiff's wife stated to defendant that he had received $260,000 for the vineyard, defendant replied that the notice was false and that he had received but $180,000.

We think a more detailed discussion of the evidence unnecessary. The transcript discloses evidence upon which the jury might find, not unreasonably, that defendant took advantage of his superior knowledge and experience with the subject matter and of the confidence which his brother had placed in him to mislead his brother and partner so as to secure to himself a great advantage in the severance of the partnership relation, and the judgment appears to be in accordance with the equities of the situation.

[6] After this statement it is obvious that the objections raised by appellant regarding alleged errors in procedure in the admission and rejection of evidence cannot have great

weight upon appeal, in view of the mandate of the law that such are to be disregarded by appellate courts where it appears from an examination of the evidence that substantial justice has been done. This observation applies to the contention that the cross-examination of the witness Kellerman was restricted unduly by the trial court and that collateral matters should have been gone into where they might have shown bias upon the part of the witness. This witness did not deny that he was biased or prejudiced against defendant, and, indeed, the entire record shows that he had quarreled with defendant and had obtained a judgment against him for $20,000 in other litigation, and the jury could not but have known that his feelings toward the defendant were not cordial. [7] The refusal to permit an examination into collateral issues, therefore, in order to demonstrate this unfriendliness toward the defendant, is not reversible error, even though we were to concede that it was error, which we do not here decide.

[8] It is also contended by appellant that error was committed by the trial court in permitting the plaintiff to testify as to the facts relating to the formation of the partnership between himself and defendant. This position is taken because the complaint alleges the formation of the partnership, which allegation is not denied by the answer, and proof of the same was superfluous. However, the complaint alleged that the plaintiff reposed confidence and trust in the defendant, and this allegation was denied. The circumstances surrounding the formation of the partnership were pertinent upon this issue, for they showed that the plaintiff gave the defendant about $15,000 in money, without any receipt for the same and without any definite understanding as to what his share would be in the enterprise, and that he relied entirely upon the defendant's judgment in the purchase of the vineyard.

[9] Some additional facts must be stated in relation to the contention of appellant that the plaintiff waived the fraud. The contract between the parties was executed on July 7th or 8th or 9th. William paid for Fred's interest in the vineyard by promissory note for $37,777, which represented the purchase price, less Fred's share of the mortgage encumbering the property. To secure this note defendant

turned over to plaintiff a $10,000 note and a $20,000 note, secured by deeds of trust on certain real property, and the balance of $7,777 was unsecured. It was stipulated that plaintiff knew of the fraud of defendant as early as December 26, 1920. On February 1, 1921, when William's note became due, plaintiff asked for payment of the unsecured portion thereof. Defendant asked him to wait until Kellerman made further payments upon the vineyard. Plaintiff said he was willing to wait, but that he had borrowed money from the bank and was paying interest thereon at the rate of seven per cent and was receiving only six per cent interest upon William's note. William thereupon consented to pay seven per cent interest until he paid the principal of the note, and he did so. Later he paid the note—that is, he paid the unsecured portion thereof and the collateral was applied to liquidate the balance. Upon this state of facts appellant maintains that the acceptance of the larger rate of interest was a waiver of the fraud.

There would be merit in this contention were this an action for rescission, but the theory of this action is that the plaintiff affirms the contract made by him with his brother and sues for damages for the fraud. That being so, we think he was entitled to deal with the consideration which he received for the contract as he desired. He was paid for his interest in the property by the note of the defendant and that transaction was closed. The note was accepted in payment and its subsequent collection became an independent transaction. And this applies with equal force to the application of the collateral upon the payment of the note. This was but a part of the transaction of collecting the note and had nothing to do with the original transaction whereby the note was given in payment.

The only other question raised is the question relative to the measure of damages. This arises because it appears in the record that after the sale to Kellerman, he and defendant had some controversy about a tractor and about the acreage of the vineyard and Kellerman refused to make a certain payment when due. Upon being sued for the amount by defendant Kellerman was awarded a reduction of $20,000 in the purchase price. Appellant claims that this amount and several thousands of dollars paid by him as attorney's

fees in the case with Kellerman should be taken into consideration in estimating the plaintiff's damage in this action. In other words, it is contended that plaintiff should bear his share of these items. This position is based upon the erroneous theory that damages are to be estimated upon the selling price of land fraudulently obtained. The selling price to Kellerman was merely evidence as to the market value of the land at the time of the fraud, and it is not the only evidence in the record upon that question. [10] Damages in a case of this kind are based upon the difference between the market value of the land obtained by the defendant and what he fraudulently induced the plaintiff to accept for the same. If defendant, after fraudulently obtaining the land from plaintiff, had made a bad bargain with it or had sold it to an irresponsible buyer and had lost money by such transactions, such circumstances would not concern the rights of the plaintiff. He had nothing to do with the sale of the land to Kellerman, nor with defendant's dealings with the land subsequent to the time he parted with his interest in the same. If appellant's position be correct, one might purchase, by fraudulent representations, for $10,000 land worth $100,000 and by showing that he had afterward sold the land again for $10,000 completely bar the recovery by the injured party. The actual damage sustained by the plaintiff in this case is the difference between what he received for the land and what it was reasonably worth at the time, and the judgment is in accord with the evidence in the record upon those figures. Plaintiff recovers for the fraud of the defendant and subsequent bad business judgment or mistakes upon the part of the defendant cannot operate to mitigate plaintiff's damage.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 20, 1924.

All the Justices concurred.