ROBERT J. TYSK v. JAMES W. GRIGGS AND OTHERS. JAMES W. GRIGGS, APPELLANT.

91 N. W. (2d) 127.

June 27, 1958—No. 37,392.

*Vennum, Newhall & Ackman* and *N. L. Newhall, Jr.,* for appellant.
*Strong, Strong & Tully,* for respondent.

NELSON, JUSTICE.

Action for money damages for deceit and misrepresentation in a transaction wherein defendant sold plaintiff certain apartment buildings in Minneapolis known as Westbank Halls for the stated price of $79,000 under contract for deed dated March 25, 1954. The contract provided for a downpayment of $25,900 made up of the following items: The sum of $1.91 in cash; the further sum of $25,898.09 by the plaintiff transferring to the defendant by absolute assignment the vendor's interest in each of three contracts for deed, fully described therein as to dates, parties, premises, interest rate, and amount of unpaid principal. The contract further provided that the balance of the purchase price, namely $53,100, should be payable at the rate of $535 monthly beginning April 15, 1954, continuing up to and including March 15,

1957, at which time plaintiff agreed to pay the difference between the amount then owing on the contract for deed and the amount of the first mortgage on the property due April 15, 1957, at which time the defendant would execute and deliver to plaintiff a warranty deed free and clear of all encumbrances except said first mortgage, together with a bill of sale transferring certain personal property to plaintiff as provided in the contract. The contract also provided that should plaintiff default in the payment of principal, interest, taxes and assessments, or premiums upon insurance or fail to perform any of the terms and conditions of the contract to be performed by him, the defendant might, at his option, declare the contract canceled and plaintiff's rights terminated with the result that all improvements, and all payments made would belong to defendant as liquidated damages. Following the aforesaid provisions the contract provided:

"IT IS MUTUALLY AGREED, By and between the parties hereto, that the time of payment shall be an essential part of this contract; and that all the covenants and agreements herein contained shall run with the land and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto."

The contract for deed was preceded by a purchase agreement signed by plaintiff and defendant dated February 26, 1954, and an agreement in modification of the terms of the purchase agreement signed March 22, 1954.

The action was commenced against James W. Griggs; Helen C. Griggs, his wife; Calhoun Realty Company, a corporation; and Winton R. Peterson. Calhoun Realty Company and Winton R. Peterson had been employed by James W. Griggs as real estate brokers and had acted on his behalf in all of the negotiations terminating in the sale. Plaintiff alleged deceit and misrepresentation in the following respects:

"That prior to the date of said Agreements and Contract for Deed above, the defendants herein, and each of them, made numerous representations to plaintiff with reference to said property hereinbefore referred to, and among said representations were the following:

"(a) That the annual income from said premises was in excess of Eighteen Thousand Dollars ($18,000).

"(b) That defendants represented to plaintiff that the heating plant and water system of the premises at 243 and 235 20th Avenue South were adequate for the premises and met the requirements of the occupancy.

"(c) That defendants represented to plaintiff that the rear apartment in the basement of 235 20th Avenue South was rented for $15.00 a week.

"(d) That defendants represented to plaintiff that the auditorium in 243 20th Avenue South could be rented and that the annual income therefrom was between $1,000.00 and $1,500.00 a year.

"(e) That defendants represented to plaintiff that the restaurant in the premises at 243 20th Avenue South was rented at a rental of $60.00 cash per month, plus 3% of the gross sales, and that the sales produced an additional average income of $60.00, making a total of $120.00 per month.

"(f) That the premises complied with all Minneapolis City Ordinances and building code."

He further alleged that such fraudulent representations were made to induce him to purchase the property; that he believed and relied upon defendants' representations in making the purchase; that they were false and untrue; and that he thereby suffered damages in the sum of $17,500.

Defendants filed a joint answer to the complaint admitting all allegations except those alleging deceit and misrepresentation, which were denied. The action was later dismissed as to Helen C. Griggs who had no present interest in the property and as to the real estate brokers. The trial resulted in a jury verdict of $11,550 against defendant James W. Griggs.

The record submitted on appeal only includes, so far as testimony is concerned, partial testimony on cross-examination of plaintiff and the direct testimony of Fred L. Chapman called by defendant to give expert testimony as an appraiser and realtor. Plaintiff and defendant entered into a stipulation settling the case, agreeing that the import of certain omitted parts is as follows:

"c.   There was no testimony of any witness to any conversations or

other dealings varying, interpreting or restricting in any way the terms of the earnest money contract * * *, the modification agreement * * * or the contract for deed * * *. *At the time of the sale defendant Griggs was fully aware of the terms of the sale as set forth in the earnest money contract and the contract for deed and agreed to the said terms.*

"d.  The three contracts for deed which were transferred from Tysk to Griggs in part payment of the purchase price, had principal balances remaining of $18,492.98, $1,739.79 and $5,665.32, as recited in the basic contract * * *. *No claim was made by Griggs that there was default in any of these three contracts nor that the security for any of them was inadequate, nor that they were not in all respects as represented by Tysk. The principal balances of these contracts were accepted by Griggs at face value to apply against the sale price of $79,000.*

"e.  Tysk testified that he paid the 1953 real estate taxes in an amount of approximately $1,000 and that this constituted in effect an additional element of the consideration.

"f.  The mortgage referred to in Griggs offer of proof regarding the laws and regulations governing Twin City Federal Savings and Loan Association is a mortgage dated September 4, 1952, executed by James W. Griggs to Thorpe Bros. in a face amount of $53,000 due in ten years and bearing interest at 5½% per annum. Thereafter by written assignment dated September 23, 1952, the said mortgage was assigned to Twin City Federal Savings and Loan Association.

"g.  A real estate expert for plaintiff testified that in 1952 mortgage money was readily available, the average term of mortgages of this kind was fifteen years and the usual interest rate was 5%, and testified that the amount of a loan would be affected by a variance of these factors.

"h.  A witness for the defendant, Harry E. Myers, Chief Appraiser for Twin City Federal Savings and Loan Association, testified that the amount of a mortgage was based upon many factors apart from the value of the property, i. e. the equity of the mortgagor, his financial and credit standing, the term of the mortgage, the rate of interest and the amount of money that the mortgagee had available at the time for mortgage loans of the type contemplated." (Italics supplied.)

The record also includes discussions between the court and counsel in chambers prior to the submission of the case to the jury. Defendant's counsel, at that time, made the following offer of proof:

"I will offer to show that it was a customary, well-recognized custom in the business at the time and place here involved that contracts for deed similar to the three that were turned in as a down payment here would be subject to a discount of 20 to 30 per cent in order to convert them into cash, and that witnesses would testify that the reasonable value of these contracts at the time in question would be 20 to 30 per cent less than the face value for which they were turned in on this transaction."

The court refused the offer stating in effect that the contracts for deed constituting a part of the downpayment were taken by defendant at a specified figure and therefore any testimony as to a custom prevailing in the community regarding selling contracts for deed for cash was immaterial.

Defendant also made the following oral request for an instruction before the trial court in chambers:

"I would want an instruction that the Twin City Federal Savings & Loan Association is a federal savings and loan association and subject to the laws and regulations which govern such bodies, and that at the time of these transactions, they were subject to the Home Owners' Loan Act of 1933, as amended, which is a part of Title XII of the U. S. Code, and that they were subject to the regulations which had been issued thereunder, and that specifically they were subject to regulations regarding the size of loans that they could make on certain types of properties with relation to the fair market value of the property, and that Sections 145.06 of the rules and regulations issued, governing their transactions, provides in part that for a loan of this character the maximum per cent of the value of the real estate which they could loan on a fifteen year basis on property of this type was sixty per cent of the market value."

The testimony in this regard had been largely excluded during the progress of the trial, and the court denied the requested instruction

apparently upon the grounds that the evidence offered lacked a direct connection with the establishment of market value; that the testimony regarding a first mortgage placed upon the property in 1952 was an attempt to reach market value inferentially only and was too remote and speculative.

Defendant in his motion for a new trial assigned the foregoing rulings of the trial judge as errors of law occurring at the trial. The other ground urged before the court below was the excessiveness of the jury verdict, which defendant claimed appeared to have been given under the influence of passion or prejudice. The assignments of error on appeal are limited to the following:

"1. Refusing to permit testimony that the three contracts for deed transferred as down payment were actually worth twenty per cent (20%) to thirty per cent (30%) less than their face values.

"2. Refusing to instruct the jury that Twin City Federal Savings & Loan Association was subject to the Home Owners' Loan Act of 1933, as amended, and regulations issued thereunder and that Section 145.06 of the regulations permitted a maximum loan on property of this type of sixty per cent (60%) of the market value.

"3. Denying defendant's motion for a new trial on the question of damages only."

The legal issues involved are therefore limited to a consideration of the foregoing assignments.

■ The trial court may properly, in the construction of a contract, put itself in the place of the contracting parties and then, in view of all the facts and circumstances surrounding them at the time the instrument was executed, consider what they intended by the terms of their agreement. The contract for deed here provided the terms upon which property was sold at a stated price. It is evident that the trial court construed the contract as one of sale instead of one for an exchange of properties, and the case was tried throughout on the theory that that was the proper construction. The case turns upon which of two constructions should be placed upon the contract for deed. We think it must be construed as one of sale. Defendant agreed to sell and convey his property at a stated price. The plaintiff, however, did not obligate

himself to pay in money only; he was permitted to complete the down-payment by the absolute assignment of three contracts for deed and a small balance in cash, receipt of which defendant acknowledged. This court has said that the fact that payment may be made in something other than money is not a controlling factor in determining whether a contract is one of sale or one for the exchange of properties. The idea expressed by some textwriters that, unless the price is payable in money only, there is no sale but merely barter or exchange of one article for another is certainly not in accordance with the provisions of our Uniform Sales Act nor is it in accordance with the weight of authority. We think the better opinion is that the transaction is still a sale, although the transfer is made for something else than money, provided each item is transferred at an agreed value so that the one item is received in payment of the price for the other. The authority to sell property, of course, is authority only to sell for cash unless otherwise expressly provided. The contract for deed involved here expressly states that the defendant sells the property to plaintiff for a stated price, accepting three contracts for deed absolutely assigned to him as downpayment. That part of the transaction was fully executed in the same manner as if the payment had been made wholly in cash. The word "sell" is not synonymous with "barter" or "dispose of." It is not to be overlooked that the rule of practical construction applies only in cases where the contract is indefinite, uncertain, or susceptible of different interpretations. There is nothing in the record on this appeal that would indicate that either the defendant or his agents and representatives intended to dispose of the property sold except by making a sale thereof and accepting the contracts at their principal face value in lieu of cash. See, Westfall v. Ellis, 141 Minn. 377, 170 N. W. 339, and cases and authorities therein cited; 7 Dunnell, Dig. (3 ed.) § 3474.

■ Nothing could be clearer than that defendant has unqualifiedly admitted that no claim has been made by him that there was, at any time, a default in any of the three contracts assigned to him as downpayment or that the security for any of said contracts was inadequate or that they were not in all respects as represented to him. The defendant further unqualifiedly admits that the principal balances of these contracts were accepted by him at face value to apply against the

stated sale price. This court in a case involving false representations in a real estate transaction (Marion v. Miller, 237 Minn. 306, 310, 55 N. W. [2d] 52, 55) said: "The price agreed upon, however, is strong evidence of the value as represented and is sufficient to support a verdict when there is no evidence of the market value of what plaintiffs would have received if defendants' representation had been true."

■ Minnesota has adopted and consistently applied what is called the out-of-pocket-loss rule in actions for false representations and deceit. It is the rule applied in the Federal courts. Damages may be recovered in an action for false representations and deceit which are the natural and proximate loss sustained by the party because of reliance thereon. Where fraud induced a purchase, the measure of damages is the difference in value between what was given and what was received. Of course there can be no recovery without a showing of injury to plaintiff resulting from the deceit and misrepresentations. The rule is that the fraud and the injury must concur. Under this rule it is not a question of what the plaintiff might have gained through the transaction but what he lost by reason of defendant's deception. Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305; Rosenquist v. Baker, 227 Minn. 217, 35 N. W. (2d) 346; 8 Dunnell, Dig. (3 ed.) § 3841, and cases cited; 7 Id. § 3479, and cases cited in note 12.

■ It appears conclusively from the stipulation settling the case that the three contracts accepted by defendant as a part of the downpayment were exactly as plaintiff represented them to be, and it appears just as conclusively that defendant makes no claim of misrepresentation against the plaintiff. Certainly the existence in the case of each contract assigned of additional security as provided therein should in no way detract from the principle governing valuation of fixed obligations to pay money. It stands admitted that at the time of sale defendant was fully aware of the terms of the sale as they had been stated, first in the purchase agreement, next in the modification agreement, and finally as restated in the contract for deed, to all of which defendant consented and agreed. The trial court must have concluded that it would not be justified in substituting a different method of valuation than that agreed upon by the parties at the time of the transaction, the parties having agreed to take the contracts for deed at their full unpaid face value

which was ascertainable from the written contents of a fixed obligation similar in many respects to a promissory note secured by a real estate mortgage.

It should also be noted that plaintiff later paid the 1953 real estate taxes, an obligation of defendant, in an amount of approximately $1,000 on the property sold to him, which constituted in effect an additional element added to the stated price.

It is to be noted that most of the cases cited and relied upon by defendant are concerned with contracts to convey property in exchange. We are here concerned with a transaction which constitutes a sale, by contract for deed, the terms of which clearly define the stated price, recite and acknowledge the downpayment through the absolute assignment of three contracts for deed, and in regard to which it must be assumed that the terms as to downpayment were fully executed at the time of the completion, execution, and delivery of the contract. The unpaid principal of each contract which the defendant received had a fixed value, a fixed interest rate, and a fixed time for payments in reduction of both. Neither side has submitted any decision to this court specifically applying the measure of damages where deceit and misrepresentation are involved to a vendor's interest in a contract for deed under these circumstances. The court instructed the jury upon the measure of damages as follows:

"If you find for the plaintiff, the measure of damages in such a case is the natural proximate loss sustained by the plaintiff because of reliance on the misrepresentations, or, in other words, the measure of damages is the difference in value between what was given and what was received, and the amount thereof is the question of fact for you to determine.

"Damage is an essential element of a cause of action for fraud and is not merely a consequence following from it; in other words, the plaintiff must have suffered a pecuniary damage in order for you to return a verdict in his favor. In cases where the fraud induces a purchase, the measure of damages is the difference in value between what is given and what is received, *and in the present action the plaintiff's damages, if any, is the difference between the market value of what was*

*given and what was received.*

"Market value is the price which property would bring on a fair market as between a willing seller and a willing buyer and arrived at by negotiation and mutual agreement." (Italics supplied.)

Defendant in his brief says that he does not believe that opposing counsel disagrees with the general proposition that the measure of damages recoverable by the victim of the fraud in an exchange of properties is the difference between what he parted with and what he received and that this measure of damages was included in the court's instructions. The defendant then goes on to say that "The trouble is that this measure of damages is meaningless in view of the court's ruling which kept out all evidence of the 'value of what was given'—that is, the three contracts." There is no trouble with the rule as stated. The rule is the same and would be the same here even though the plaintiff had made a downpayment of $25,900 in cash. It is simply a question of whether it is applied to a contract for an exchange of properties or to a contract for deed, as we have before us, constituting a sale where an absolute assignment of vendor's interest in contracts for deed, of which the face value is ascertainable, were taken in lieu of cash as downpayment.

■ The rule seems to be that where, as here, the property that the plaintiff parted with has two possible different values due to claimed different methods of valuation the method agreed upon by the parties at the time of the transaction will govern. See, Lund v. Larsen, 222 Minn. 438, 24 N. W. (2d) 827.

■ It is our view that for the trial court to have permitted defendant to introduce evidence of a custom of discounting contracts for deed would have permitted the jury to indulge in speculation in approaching the question whether the defendant would be entitled to a reduction in damages. Clearly if the defendant was seeking to establish the market value of the vendor's interest in the three contracts for deed it would have been necessary for him to have offered evidence by expert witnesses familiar with the terms and conditions of each contract; the value of the land securing the payment of the fixed obligations therein contained; terms of payment; interest rate; amount of prior encumbrances,

if any; and the credit of the vendee. No such proof was adduced or offered. It is clear that the reduction in value contended for by the defendant due to discount rates appears to have received no consideration at the time of the execution and delivery of the contract for deed. Certainly both parties to the contract must have been familiar with the discount custom if it prevailed as the defendant claims. If defendant did later sell one of the contracts for deed at a discount, it must be assumed that he would have done so for compelling reasons extraneous to the contract for deed and that he certainly would not under the circumstances qualify as a willing seller, one of the necessary qualifications in establishing market value. There is nothing in the evidence to indicate that plaintiff did not intend to hold the three contracts for deed and to collect in full the principal remaining due and interest thereon as provided. He had obtained an absolute assignment of the vendor's interest in each contract, accepted the same at its face value and of course was free to sell them with or without giving a discount. It is clear that if he sold at a loss no provision in the contract for deed would permit him to charge that loss to the plaintiff. As stated in Monroe v. Thulin, 181 Minn. 496, 499, 233 N. W. 241, 242: "It is not for the wrongdoer to dictate the remedy to be pursued by his victim in order to secure redress." The record, however, discloses no evidence that defendant sold any of the contracts assigned to him or that he suffered any loss on either of them. In fact he has stipulated that at the time of the sale he was fully aware of the terms of the sale as set forth in the purchase contract and the contract for deed and agreed to the said terms. Any sale by defendant at a discount would be voluntary, would constitute a unilateral act on his part, and so far as the record discloses would have been performed without plaintiff's knowledge or consent. There is no authority for the defendant thus depreciating the principal balances of these contracts up to 30 percent and thereby reducing the damages that the plaintiff was entitled to recover. The ruling of the trial court on that issue was without prejudicial error.

■ The basic principle in similar cases was stated by Mr. Justice Mitchell in Wallace v. Hallowell, 56 Minn. 501, 506, 58 N. W. 292, 293, as follows:

"* * * In accordance with the cardinal principle that compensation should be commensurate with the loss, the rule is, and always has been, that in actions of deceit, or for fraudulent representations, the damages recoverable are all those which naturally and proximately result from the fraud. * * *

\*   \*   \*   \*   \*

"We see no reason to doubt the correctness of the rule adopted in Reynolds v. Franklin [44 Minn. 30, 46 N. W. 139], and cases following it. *Of course, the statement of the rule must always be construed in the light of the facts of the case then being considered."* (Italics supplied.)[1]

■ On the court's refusal to instruct the jury that Twin City Federal Savings & Loan Association was subject to the Home Owners' Loan Act of 1933, as amended, 12 USCA, § 1461, et seq., and regulations thereunder permitting a maximum loan on property of this type of 60 percent of the market value, it should be observed that the practice is well settled that the value of what the plaintiff received under the circumstances of this transaction is to be determined by its value at the time of the sale, and under the usual standard the market value would be looked to. See, Cartwright v. Hughes, 226 Ala. 464, 147 So. 399; Lichtenthaler v. Clow, 109 Ore. 381, 220 P. 567; Sigafus v. Porter, 179 U. S. 116, 21 S. Ct. 34, 45 L. ed. 113; Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. ed. 279; McCormick, Damages, § 122, p. 456.

■ Defendant had sought to establish market value of the property

---

[1]See, Monroe v. Thulin, 181 Minn. 496, 233 N. W. 241; Timmerman v. Whiting, 118 Minn. 398, 137 N. W. 9; Dingman v. Pahl (Tex. Civ. App.) 226 S. W. 446; Wehner v. Wehner, 68 Cal. App. 789, 230 P. 458.

In Southern Ice Co. v. Morris (5 Cir.) 219 F. 551, 552, the court said: "As the transaction by which the ice plant was disposed of involved an admission by the defendant that it was worth $100,000, it was not incumbent on the plaintiff to aver and prove its value," citing Sun Printing & Publishing Assn. v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. ed. 366.

"* * * A contract providing for the exchange of corporate stock for stock of a new corporation made in the course of the organization of such corporation should not be construed as fixing the absolute value of the securities at the estimated value recited in the contract in the absence of a plain stipulation to that effect." 33 C. J. S., Exchange of Property, § 6, p. 31; Rockefeller v. Merritt (8 Cir.) 76 F. 909, 35 L. R. A. 633.

sold by offering testimony of a certain mortgage transaction occurring in 1952 between defendant and Thorpe Bros. which security was later transferred to Twin City Federal. The offer came in connection with the testimony of the witness Chapman, who had not qualified to give an opinion directly on the market value of the property but whom the defendant attempted to qualify on the basis of the mortgage transaction of 1952 reflecting market value. We think it was incumbent upon the defendant to place before the court expert evidence as to the market value of "Westbank Halls" at the time of the execution of the contract for deed in 1954. An expert witness on that issue should qualify by the required foundation evidence which the witness Chapman did not do. According to the testimony of a witness for defendant, Harry E. Meyers, Chief Appraiser for the Twin City Federal Savings & Loan Association, the amount of a mortgage was based upon many factors apart from the value of the property; that is, the equity of the mortgagor, his financial and credit standing, the term of the mortgage, the rate of interest, and the amount of money that the mortgagee had available at the time for mortgage loans of the type contemplated. The question whether the expert witnesses were sufficiently acquainted with the property at the proper time and place to qualify them to give their opinions as to its market value was a question for determination by the trial court, and admission or exclusion of their testimony was within its discretion. Marion v. Miller, *supra;* St. Paul Mercury Ind. Co. v. Lyell, 216 Minn. 7, 11 N. W. (2d) 491; Apitz v. City of New Ulm, 189 Minn. 205, 248 N. W. 733; In re Delinquent Taxes, Kanabec County, 164 Minn. 522, 204 N. W. 640; Cleveland v. Rowe, 99 Minn. 444, 109 N. W. 817; Meyers v. McAllister, 94 Minn. 510, 103 N. W. 564. We think the exclusion of this testimony was clearly within the court's discretion. The court did not err in refusing to instruct the jury as requested on the aforesaid issue. In any event it constituted error without prejudice.

The excessiveness of the verdict will not be considered since that issue has not been carried over into the assignments of error on appeal. We see no error on the part of the trial court in denying defendant's motion for a new trial on the question of damages only. Accepting the testimony most favorable to the prevailing party as this court is

bound to do in considering the order denying defendant's motion, we reach the conclusion that the record as submitted does not justify the granting of a new trial on any of the grounds urged. The charge was not challenged as to the language used in instructing as to the applicable measure of damages. There is ample support in the record to sustain the verdict.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.