Roger A. PETERSON, Appellant,

v.

Robert B. JOHNSTON, etc., et
al., Respondents.

No. 46829.

Supreme Court of Minnesota.

May 6, 1977.

Peterson, Engberg & Peterson and William F. Garber, Minneapolis, for appellant.

Strong, Tully & Tully, and Ralph H. Tully, Minneapolis, for respondents.

Heard before MacLAUGHLIN, SCOTT, and STAHLER, JJ., and considered and decided by the court en banc.

THOMAS J. STAHLER, Justice.*

Plaintiff, Roger A. Peterson, brought this action to recover damages for alleged fraud in a real estate transaction. The district court, sitting without a jury, made findings of fact and conclusions of law favorable to defendants. Plaintiff appeals from a denial of his motion for amended findings, or in the alternative, for a new trial. We affirm.

Defendant Robert B. Johnston (Johnston) is a real estate broker and president of defendant Robert B. Johnston, Inc., a real estate company. Defendant The Realty House, Inc., is a corporation owned by approximately 10 real estate brokers, one of whom is Johnston, who do business under its name.

Plaintiff is an attorney. In April or May 1973, plaintiff made an appointment with Johnston to inspect a double bungalow located at 7505–7507 West Shore Drive in Edina, which was listed for sale by defendants Robert B. Johnston, Inc., and The Realty House, Inc. The property in question was located about 400 feet east of State Highway No. 100, which runs generally north and south. During this period construction was taking place on State Highway No. 100.

Johnston met plaintiff at the property on two occasions. Plaintiff testified that on the first visit he inquired of Johnston concerning the future use of an adjacent vacant lot to the west which was located between the subject property and State Highway No. 100, and Johnston told him that the land was going to be a park. Johnston denied any such conversation on the first visit. Johnston stated that on the second visit, when plaintiff was accompanied by his mother, she asked about an old foundation on the adjacent lot and Johnston told her it was to be removed and the entire lot was to be cleaned up and landscaped. As a result of these visits to the property and negotiations with Mr. and Mrs. Whitehead, the sellers, plaintiff signed an earnest money contract in late May 1973. The purchase price was $85,000, of which $1,500 was allocable to personal property. Closing took place on August 1, 1973. Plaintiff currently occupies the premises.

In fact, there were no plans to build a park on the adjacent lot. An interchange connecting Industrial Boulevard with State Highway No. 100 was to be built to the southwest of the subject property, and a portion of the adjacent lot was scheduled to become an entrance ramp leading onto State Highway No. 100. Work on this project began in 1973, but there is some dispute as to whether anything had been done before closing. The Whiteheads testified that stakes were driven and excavation begun before closing.

Plaintiff claimed that he made no inquiry concerning the future use of the adjacent lot and relied solely on Johnston's representations, but admitted that he knew highway construction was in progress in the area. Plaintiff's evidence of reliance was rebutted by the Whiteheads, who testified that plaintiff had told them he had gone to Edina City Hall and had seen plans for the area.

Plaintiff's evidence of damages consisted of his own opinion that the value of the property had declined to $65,000 and the opinion of Robert Wilson, an appraiser, that the property was worth $75,000. In rebuttal defendant introduced testimony of Justin Midthun, an appraiser for Farmers &

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

Mechanics Bank, who made an independent appraisal in May 1973 and, taking into account the proposed interchange, put the value at $88,000. Defendant also offered the testimony of Stan Larson, a real estate broker, who expressed the opinion that the interchange would not affect the value of the property.

In a short memorandum accompanying its findings, the trial court stated:

"The evidence before this Court is inconclusive with respect to any fraud or misrepresentation. It should also be noted that plaintiff is an attorney experienced in real estate matters and had abundant opportunity to investigate and question about the adjacent property. Furthermore, plaintiff testified that he was generally familiar with the fact that substantial highway construction was in progress in the area.

"Most important, the evidence and a viewing by the Court appear to substantiate the representation that there was no diminution in value even assuming misrepresentations were made or that there was a failure to make relevant disclosures."

■ Plaintiff challenges only the factual findings of the trial court. It is well established that upon review such findings will not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52.01, Rules of Civil Procedure.

■ The trial court's findings of fact are arguably incomplete as they do not make the basis of its decision clear. The trial court found only that there was a conflict with respect to the value of the property. However, in its conclusions of law it states that "plaintiff's property has not experienced a diminution of value * * *." We think the conclusions of law and the accompanying memorandum of the trial court sufficiently explain the basis of its decision. Where it appears that the decisive issues have been decided by the trial court without a jury, the reviewing court is not required to reverse simply because the trial court might have gone into more detail in the explanation of its findings. *Caroga Realty Co. v. Tapper*, 274 Minn. 164, 143 N.W.2d 215 (1966).

■ We have consistently followed the "out-of-pocket-loss" measure of damages in fraud cases, rather than the "benefit-of-the-bargain" rule. *Tysk v. Griggs*, 253 Minn. 86, 91 N.W.2d 127 (1958). Where the case involves a fraudulent misrepresentation to a buyer of real estate, the measure of damages is the amount paid less the fair market value of the property. *Marion v. Miller*, 237 Minn. 306, 55 N.W.2d 52 (1952).

■ Plaintiff purchased the property for $85,000, of which he stated $1,500 was paid for various items of personal property. Plaintiff testified that in his opinion the property was worth $65,000. Plaintiff's expert valued it at $75,000. Had the trial court chosen to adopt either figure it would have ground substantial damages. However, Justin Midthun, a neutral appraiser for a lending institution, valued the property at $88,000, and Stan Larson, defendant's expert, stated the interchange would make little or no difference in the value of the property. The court also viewed the property first hand. The court was entitled to believe defendant's evidence regarding value and disbelieve plaintiff's.

■ The same is true of the trial court's conclusion that plaintiff had not shown reasonable reliance on the alleged misrepresentations. The plaintiff is an attorney, experienced in real estate matters and was aware of highway construction in the vicinity. The testimony of the Whiteheads indicated that he was in fact familiar with the plans for the interchange. Where there is a conflict of evidence, it is for the trial court hearing a matter without a jury to mentally sift the evidence and determine the facts, and we will not disturb its findings where there is evidence which reasonably supports the same. Viewed as a whole, the evidence reasonably supports the findings in this case and the order appealed from is therefore affirmed.

Affirmed.