Roy J. JENSEN, et al., Respondents,

v.

Donald E. PETERSON, et al., Appellants.

No. 47295.

Supreme Court of Minnesota.

Feb. 10, 1978.

Muir & Wieneke and Ross M. Muir, Rochester, for appellants.

Rietz, Rietz & Rietz and Larry J. Rietz, Owatonna, for respondents.

Heard before YETKA, SCOTT, and IVERSON, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal by defendants from an order of the Steele County District Court denying a motion for judgment notwithstanding the verdict or a new trial. The jury found that the defendants had used fraud or misrepresentation in the purchase of plaintiff's trailer court and its subsequent resale. The

jury awarded compensatory damages of $12,500 and punitive damages of $1,675. We affirm.

In 1968 plaintiffs Roy and Evelyn Jensen sold their trailer court located in Medford, Minnesota, to plaintiffs James and Mary Jensen on a contract for deed. In March 1974 James and Mary listed the property with an Owatonna realtor for sale at $39,900, but they received no written offers.

On July 7, 1974, Roy Jensen signed a listing agreement with defendant Donald Peterson, listing the sale price at $42,000. The listing agreement was also signed by Mary Jensen, but at a later time. Peterson ran an advertisement in the Minneapolis Tribune from August 15 thru 18. The only response to the ad was by Donald Beckman.[1]

Donald Beckman had no money for a down payment and could only buy the trailer court if the Medford Bank owned by Donald Peterson would loan him $5,000 on his house. Beckman had trouble selling his house because it didn't qualify for an FHA or G. I. loan.

On August 26, 1974, Peterson called Beckman and set up an appointment for the next day. At the meeting in the Beckman home, Peterson told the Beckmans that James Jensen had a blood disease and led Beckman to believe that the bank was getting the property back from the Jensens.[2] Peterson also told the Beckmans that the price of the trailer court was $45,000 and that his bank would finance the $5,000 down payment on the equity in their home.

Peterson then told Roy Jensen that some people from Austin (meaning the Beckmans) would buy the trailer court for $35,000, with a $5,000 down payment financed by the bank and the balance on a contract for deed. Roy Jensen stated that he found these terms acceptable.[3] At no time did Peterson ever tell the Jensens that Beckman was willing to pay $45,000 for the property.

On September 3, 1974, Roy Jensen signed an earnest money contract for the sale of his interest in the trailer court for $30,000. The parties to the contract were Roy Jensen and Petefam, Inc. Defendant Petefam, Inc., is a corporation whose sole shareholder and president is Donald Peterson. Scott Peterson, defendant's son, is an officer of Petefam, Inc.

On September 4, 1974, the Beckmans visited the trailer court, and on September 6, 1974, they signed an earnest money contract to buy the trailer court from Petefam, Inc.[4] On September 11, 1974, Peterson held three separate closings in his office: One with Roy and Evelyn; one with James and Mary; and one with the Beckmans. The Jensens testified that Peterson read from the documents at the closing and then had them sign without their reading. The Jensens also testified that their signatures were not notarized in their presence. The James Jensens signed a quitclaim deed and a bill of sale on September 11, 1974. In addition, they apparently signed an earnest money contract, backdated to September 3, 1974. The Roy Jensens signed a warranty deed, and a mortgage agreement and note. They testified that they never received a copy of any documents evidencing Petefam's indebtedness. Roy Jensen received $1,000; James and Mary received $4,000. James Jensen's payments of $400 per month on the original contract for deed were up to date. The mortgage with Petefam, Inc., which Roy Jensen believed to be a contract for deed, called for payments of $450 per month.

1. Beckman and his wife are the present contract vendees of the trailer court. They are not parties to the lawsuit. There is some discussion in the record of a lawsuit brought by the Beckmans against Peterson and later dismissed.

2. James Jensen did have a serious blood disorder and was hospitalized for much of the period under dispute.

3. Peterson strongly disputes the fact that Roy Jensen found the terms acceptable. He specifically testified that Roy Jensen did not want another contract for deed.

4. The earnest money contract with Roy Jensen provided that he would pay special assessments. The contract with the Beckmans provided they would assume them.

All four Jensens also signed a purported disclosure document. The Roy Jensens had a copy of the agreement, but James and Mary did not. The document disclosed that the sale was made to Petefam, Inc. but it did not state that Petefam, Inc. was wholly owned by Donald Peterson. It did not disclose that the property was to be resold to the Beckmans for $45,000. The documents were prepared by the bank's attorney at Peterson's request.

At the Beckman closing, the Beckmans were instructed not to tell Roy Jensen the purchase price of the trailer court. In early June 1975, in a conversation with Donald Beckman, Roy Jensen discovered that the Beckmans had paid $45,000 for the trailer court.

At the beginning of the April 1976 term of court, defendants attempted to serve a third party complaint on James and Mary Jensen (the law suit was brought originally by Roy and Evelyn). They also attempted to amend their answer to include a counter-claim for fraud against the plaintiffs. The trial court ordered James and Mary joined as plaintiffs, allowed the amendment, but severed the trial of the counterclaim for a later trial. The counterclaim alleged that the Jensens intentionally failed to disclose the existence of Department of Health orders which would require the removal of several trailer units and lower the trailer court's income potential.

The defendants raise in substance the following legal issues:

1. Did the trial court err in not directing a verdict in favor of the defendants?

2. Did the trial court err in separating the trial of defendants' counterclaim from the trial of the main issue?

3. Did the trial court erroneously exclude evidence that the trailer court was the subject of State Department of Health orders?

4. What is the standard of proof in an action for fraud?

5. Did the trial court erroneously refuse to reform the contract?

6. Was plaintiffs' closing argument concerning the Jensens' health prejudicial where curative instructions were requested and given?

■ Although this case has been characterized by the parties as one involving fraud and misrepresentation, it is more properly conceived of as a breach of a real estate broker's duty of full disclosure in the purchase of property from his principal. *Boulevard Plaza Corp. v. Campbell*, 254 Minn. 123, 94 N.W.2d 273 (1959). Because of this characterization, under the facts of this case, application of the traditional fraud measure of damages would not be appropriate.

This court has consistently followed the minority "out-of-pocket" rule in fraud and misrepresentation cases. *Peterson v. Johnston*, Minn., 254 N.W.2d 360, 362 (1977). Where fraud induces a purchase, the measure of damages is the difference between what is given and what is received. *Tysk v. Griggs*, 253 Minn. 86, 95, 91 N.W.2d 127, 134 (1958).[5] Where fraud induces a sale, the measure of damages would be the same. In the present case, even if the fraud committed by Peterson did not necessarily induce the sale, the failure to disclose the resale price resulted in the Jensens getting $10,000 less than they were entitled to.

■ The failure of Peterson to disclose the fact that he was negotiating a price of $45,000 with the Beckmans and his misrepresentation that they were offering $35,000 is a clear violation of his broker's duty as set forth in *Boulevard Plaza Corp., supra.*[6] The primary remedy for breach of a broker's fiduciary duty is the restitutionary recovery of secret profits. Dobbs, Remedies, § 10.5, p. 688.[7] Under this measure of

---

**5.** See, Dobbs, Remedies, § 9.2.

**6.** See, also, Dobbs, Remedies, § 10.5; Restatement, Agency (2d) § 390.

**7.** See, cases collected at Annotation, 7 A.L.R.3d 693.

damages, plaintiffs are entitled to recover the $10,000 profit and the commission.[8]

This court has been flexible in the past where the strict application of an out of pocket damage rule would fail to do substantial justice. In *Lewis v. Citizens Agency of Madelia, Inc.*, 306 Minn. 194, 235 N.W.2d 831 (1975), the court affirmed a lower court's damage award in a fraud case involving misrepresentations in the sale of insurance. In holding that the loss of the policy was a natural and proximate result of the reliance on the agent's misrepresentation, the court refused to apply a strict out of pocket rule in order to reach a just result. The same reasoning is applicable to this case.[9] If Peterson was, in fact, defrauded by the Jensens, after the trial of the counterclaim the parties will be in the position they would have been in had no fraud or breach of duty been present.[10]

(1) Sufficiency of the evidence.

Defendants' claims that the Jensens could not have been defrauded as a matter of law are not persuasive. Defendants' claim that Roy and Evelyn could not have been damaged because they received more than they were owed on their original contract for deed. This argument misconceives the issue. If Peterson made a secret profit on his sale to the Beckmans, he must give that profit up. Division of the proceeds is a matter for the plaintiffs. Even if the James Jensens were damaged by Roy Jensen's conduct, Peterson should not be able to assert their claim as a defense to his breach of duty.[11]

Defendants also argue that James and Mary Jensen could not have been defrauded as a matter of law because they were satisfied to receive $4,000. This argument fails for the same reason as the argument with regard to Roy and Evelyn. If the defendant's argument were to prevail, then no one could ever recover on a fraud or breach of duty claim because the defrauded party is usually satisfied until he finds out about the fraud or breach of duty.

Defendants argue that since plaintiffs must have known that Petefam, Inc. was purchasing the trailer court and because plaintiffs signed a "release," defendants were entitled to a directed verdict. The proper scope of review of the court's refusal of a directed verdict in this case is whether the evidence viewed most favorably to plaintiffs reasonably sustains the verdict. *Freeman v. Morris Const. Co.*, 185 Minn. 503, 241 N.W. 677 (1932). Under this standard the evidence was more than sufficient to support the jury's finding. Even if, as defendants contend, plaintiffs knew that Petefam, Inc. was purchasing the trailer court, the evidence is overwhelming that Peterson misrepresented the ultimate selling price to plaintiffs and failed to disclose his ongoing negotiations with the Beckmans. The "release" is drafted to disclose as little as possible: it states only that Peterson is Petefam's agent, not its sole shareholder, and it nowhere mentions a $45,000 resale price. In its memorandum accompanying the post trial orders the court clearly used the correct standard in denying the motion for a directed verdict, applying the rule in *Stenzel v. Bach*, 295 Minn. 257, 203 N.W.2d 819 (1973).

(2) Separation of defendants' counterclaim.

Rule 42.02, Rules of Civil Procedure, allows the trial court to order a separate

---

**8.** Peterson should not be allowed to profit from his own wrongful conduct, thus the plaintiffs are entitled to recover the full $12,500 profit reported by Petefam, Inc.

**9.** No specific instruction was requested or given on the measure of damages. Plaintiff's counsel suggested $12,500 in compensatory damages.

**10.** If Peterson was the Jensens' agent in the sale to the Beckmans, the Beckmans may have a claim against the Jensens. Restatement, Agency (2d) § 256. To fully determine the lawsuit, the Beckmans should be joined as parties plaintiff to the counterclaim.

**11.** The result would be the same under an application of the traditional fraud measure of damages. The amount owing on a contract for deed is evidence of the value of an interest, but it is not conclusive. The vendor and vendee can agree on a different division of the proceeds. Because defendants were not entitled to a directed verdict, their argument that Roy and Evelyn Jensen were wrongly included on the verdict is similarly invalid.

trial of a counterclaim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy * * *." That portion of the order granting the leave to amend the answer which concerned separation of the trial of the counterclaim was based upon prejudice to plaintiffs and avoidance of delay. The record indicates that plaintiffs' attorney would have asked for additional discovery on the counterclaim and that the defendants had ample time to bring the counterclaim. Defendants' attorney stated that he found out about the facts underlying the claim at least one month earlier.

In deciding to order separate trials the court has wide discretion and should not be reversed except for an abuse of discretion. 2 Hetland & Adamson, Minnesota Practice, p. 215.[12] The additional delay which would have been caused by failing to order separate trials appears to be within the reasons contemplated by the rule. Although it might have been preferable to try all aspects of this case in one lawsuit, under the facts we find no abuse of discretion.

(3) Health Department Orders.

■ The exclusion of this evidence would be erroneous if the out of pocket rule of damages has applied to the present case. The orders are clearly relevant to the value of the trailer court as given up by the Jensens.

Since we hold that the "secret profit" restitutionary measure of damages is applicable in this case, the evidence was properly excluded. The trial court correctly held that it was relevant only to the counterclaim.

Defendants also claim that the evidence was relevant to the issue of punitive damages. In support of that contention they cite Clement v. Brown, 57 Minn. 314, 59 N.W. 198 (1894). In Clement, this court refused to allow a woman who had been engaged in an adulterous relationship to recover any more than compensatory damages for breach of promise to marry. The case may be explained in part by the court's reluctance to reward behavior which it considered immoral.

Punitive damages are usually considered to be a deterrent to particularly egregious conduct, but some courts consider the award as compensation for the plaintiff's injured feelings or as a reward under a private attorney general theory. Dobbs, Remedies, § 3.9. Although the reward theory might conceivably support defendants' contention here, later Minnesota cases do not use that rationale. Benson Co-op. Creamery Assn. v. First District Assn., 276 Minn. 520, 151 N.W.2d 422 (1967), clearly indicates a deterrence rationale.

(4) Standard of proof in fraud cases.

■ Defendants claim that the correct standard of proof in fraud cases is proof by clear and convincing evidence. However, both cases cited by defendants in their brief[13] involved actions to avoid written instruments whose entry was induced by fraud. Martin v. Guarantee Reserve Life Insurance Co., 279 Minn. 129, 155 N.W.2d 744 (1968), cited by plaintiffs, appears to overrule those cases by implication. Martin further states that the burden of proof in fraud action for damages has always been proof by a preponderance of the evidence. Cf. Rother v. Hiniker, 208 Minn. 405, 294 N.W. 644 (1940). We find no reason to apply different burden of proof in the present case involving recovery of secret profits. Thus, the trial court was correct in its instruction.

(5) Reformation as a remedy.

■ Defendants contend that the court erred in not granting reformation of the contract to substitute the plaintiffs for Petefam on the contract for deed. Plaintiffs chose to sue for money damages and not for

---

**12.** See, 5 Moore's Federal Practice, § 42.03; 9 Wright & Miller, Federal Practice and Procedure, § 2388.

**13.** *Hentges v. Schuttler,* 247 Minn. 380, 77 N.W.2d 743 (1956); *Daly v. Duwane Construction Co.,* 259 Minn. 155, 106 N.W.2d 631 (1960).

reformation or recission. Election of remedies lies with the plaintiffs. *Tysk v. Griggs, supra.*

(6) Prejudicial final argument.

 At the close of his final argument plaintiffs' counsel urged the jury to consider the physical condition of the plaintiffs in determining punitive damages. He referred to facts or actions which had been brought out at trial, including James Jensen's cataracts, Evelyn Jensen's disabilities, and Roy Jensen's heart condition. Defense counsel immediately moved for a mistrial. The motion was denied, but the trial court gave a curative instruction. He told the jury that physical condition of the plaintiffs was irrelevant to damages, but could be considered in assessing a person's capacity to contract. The jury awarded punitive damages of $1,675.

The general rule in awarding punitive damages is that they may be awarded for a willfully wrongful act done with malice. *Benson Co-op. Creamery Assn. v. First District Assn., supra.* The court's instruction on punitive damages reflected this rule. The evidence presented at trial would have, in the absence of counsel's argument, supported the jury's finding that Peterson willfully and maliciously defrauded the plaintiffs. Plaintiffs' attorney suggested that the figure be "nominal" and that "[i]t shouldn't be a figure that is going to break anybody."

Because punitive damages depend primarily on the *defendant's* conduct and ability to pay, evidence of plaintiff's physical condition is not obviously relevant. It would be theoretically relevant if a defendant took specific advantage of a plaintiff's physical condition, e. g., blindness. This is not the case here. If the argument was not relevant, then it was an improper appeal to the jury's prejudice and sympathy, but granting of a new trial on this issue is within the trial court's discretion. *Lott v. Davidson,* 261 Minn. 130, 109 N.W.2d 336 (1961). In its memorandum accompanying the denial of defendants' motion for a new trial, the court addressed this issue. It

pointed out that a mistrial should not be granted where punitive damages was only a fraction of the trial, and further noted that the evidence supported the award of compensatory damages. The court also held that any prejudice was removed by its instruction and that defendants had waived their objection to the instruction by twice failing to request changes. We find that the trial court did not abuse its discretion in so holding.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.